CONTINENTAL INSURANCE COMPANY, a corporation existing
under the laws of the State of New York, defendant below,
plaintiff in error, *vs.* SOLOMON M. ROSENBERG, plaintiff
below, defendant in error.

*Fire Insurance Policy—Iron Safe Clause—Warranty—Other*
*Insurance—Inventories and Books; what they must show;*
*where to be kept; when to be produced—Insurance Con-*
*tracts; how to be Interpreted—Agencies—Evidence—*
*Reasonable Time; when a Question for the Jury—*
*Supreme Court—Affirmance of Judgment*
*below.*

1.    In an insurance policy the "iron safe clause" is a covenant which
constitutes a warranty on the part of the insured, a breach of which would
prevent his recovery.    The plaintiff must show at least a substantial com-
pliance with every material part of said clause, or fail in his suit.

2.    Although the plaintiff had procured other insurance upon his
stock of goods greater than that which was permitted by the policy sued
on, that fact would not prevent him from recovering, provided the agent
of the defendant company, who issued and delivered the policy, and col-
lected the premium, had knowledge of such excessive insurance, and the
company did not cancel the policy.    The knowledge of the agent having
such powers, and performing such duties, is held to be the knowledge of
the company.

3.    Certain inventories, admitted in evidence and which disclosed
the kinds of goods in stock, with their values, although not so full and par-
ticular as might be expected or desired, held to substantially  comply with
the requirements of the policy, and to be inventories within the meaning
of the "iron safe clause" and were sufficient to inform the company, with
reasonable certainty, of the character, quantity and value of the goods in
stock, and that is all that is required.

4.    Although the inventory was not continued to be kept in such
place as the policy named yet, if it was preserved and actually produced
for the inspection of the company as required, it is sufficient, provided the
entries thereon are correct and true.

5.    While the "iron safe clause" provides that a set of books shall be
kept which shall clearly and plainly present a complete record of pur-
chases of stock from date of inventory, it does not necessarily mean that
such record must be in book form.    Invoices of goods purchased, if they
were goods purchased since the date of inventory, and are produced for the
inspection of the company in a reasonable time, furnish a  substantial
compliance with this requirement of the policy.    And it matters not if
such invoices were not kept in the exact place or method mentioned in

the policy, provided they were actually preserved and produced for the inspection of the company in a reasonable time.

6. Although the plaintiff in his proof of loss stated his total loss or damage to be about $4700, he is not thereby precluded from asserting such statement to be erroneous, and explaining the error if he can, and proving upon the trial a greater loss than the amount claimed in such proof of loss.

7. The principles of interpretation applicable to contracts of insurance are the same as those which obtain in the case of other contracts, subject to the exception that insurance contracts should be construed most strongly against the insurer, for the reason that it is the insurer's language that must be interpreted. In the interpretation of insurance contracts the law does not require a literal interpretation.

8. A covenant in the policy to keep a set of books showing a complete record of business transacted, including all purchases and sales both for cash and credit, should not be interpreted to mean such books as would be kept by an expert bookkeeper in a large business house. That provision is satisfied if the books kept were such as to fairly show to a man of ordinary intelligence all purchases and sales, both for cash and credit.

9. The object of the "iron safe clause" of the policy is to facilitate the ascertainment of the extent of the loss, and prevent misrepresentation and fraud on the part of the insurer.

10, A demand by the duly authorized agent of the company for all the books and papers of the insured is the demand of the company, and it is the duty of the insured to comply therewith in a reasonable time; and if such agent is informed by the insured that the books and papers produced were all the books and papers kept by him, the agent has a right to rely on such information.

11. Books which show the daily totals of cash sales, disclose with substantial certainty the extent to which the stock has been depleted; and such books, together with the last inventory, and books or invoices showing all purchases since, enable the insurer to ascertain the value of the stock lost by the fire and therefore substantially comply with the reequirments of the contract in that belhaf.

12. All books and papers that the insured was required by the "iron safe clause" to produce for the inspection of the company should be produced in a reasonable time, but the Court cannot say, as matter of law, that the production of such books or papers at the trial of the cause is not a production of the same in a reasonable time. That is a question to be determined by the jury under all the facts and circumstances of the case as disclosed by the evidence.

*(January 20, 1909.)*

NICHOLSON, CH., and SPRUANCE and BOYCE, J. J., sitting.

*Josiah O. Wolcott* and *James H. Hughes* for plaintiff in error.

*Martin B. Burris* and *Robert H. Richards* for defendant in error.

Supreme Court, June Term, 1908.

WRIT OF ERROR to the Superior Court for New Castle County.

This was an action of debt brought by Solomon M. Rosenberg against the Continental Insurance Company, to recover the sum of $2,000, with interest, on a policy of fire insurance, covering a stock of merchandise of the plaintiff.

The following is the charge of the Court below:

PENNEWILL, J., charging the jury:

Gentlemen of the jury:—This is an action brought by Solomon M. Rosenberg against the Continental Insurance Company to recover the sum of two thousand dollars, with interest from April 13, 1906, which is alleged to be due and owing from the defendant to the plaintiff on a certain insurance policy issued September 9, 1905, on the plaintiff's stock of goods in a store in the town of Middletown in this County, which stock was destroyed or damaged by fire on January 18, 1906.

It is admitted that written notice of said fire was given to the company, as required by the policy.

It is also admitted that in addition to the policy sued on in this action, there were, at the time of the fire, three other policies of insurance issued by other companies on the same stock of goods, and aggregating $4,000.

It is claimed by the plaintiff that the value of his stock of goods at the time of the fire was over $7,000; that the vlaue of the goods not destroyed was $850.70; and his total loss the sum of $6,310.

The plaintiff also claims that the value of the goods destroyed or damaged by the fire was greater than the total amount of insurance thereon, and that the entire amount of the policy in

suit is, therefore, due and payable.

The plaintiff further contends that he furnished the proofs of loss as required by the policy, and substantially performed or complied with all the conditions which were to be performed on his part.

The defendant company resists payment on several grounds, which may be summarized as follows:

1. That the inventories and books required to be kept by the insured were not kept in the manner provided by the iron safe clause of the contract.

2. That neither the inventory of 1905 nor the inventory of 1906 is such an inventory as is provided for in the policy sued on.

3. That the plaintiff failed to produce for the inspection of the company books showing purchases and sales of stock, as required by said policy.

4. That the books purporting to show the cash sales of stock since the date of inventory, and produced for the inspection of the company, are not such books of cash sales as is required by the terms of the policy.

5. That the total amount of insurance on the stock of goods at the time of the issuance of the policy sued on was greater than the sum represented by the plaintiff and mentioned in the permit slip attached to the policy.

The said "iron safe clause," which is attached to and made a part of the policy sued on, is in the following language:

"Warranty to Keep Books and Inventories, and to Produce Them in Case of Loss.

"The following covenant and warranty is hereby made a part of this policy:

"The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within 30 days thereof, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

"The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory as provided for in the first section of this clause, and during the continuance of this policy.

"The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.

"In the event of failure to produce such set of books and inventories for the inspection of this Company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

The defendant contends that said clause constitutes a warranty on the part of the plaintiff, and he must show that he has performed the conditions, or complied with the requirements, thereof, before he is entitled to recover in this action.

Unquestionably such clause is a covenant which constitutes a promissory warranty on the part of the plaintiff, a breach of which would prevent his recovery. The plaintiff must show at least a substantial compliance with every material part of the said clause or fail in his suit. The important thing therefore to determine is whether such a compliance has been shown.

It may seem a little irregular, if not illogical, to consider the contentions of the defendant in the order we shall follow, but we prefer to direct our attention first to those points respecting which we have had the least difficulty.

Although the plaintiff had procured other insurance upon his stock of goods greater than that which was permitted by the policy sued on, that fact would not prevent him from recovering in this case, provided the agent of the defendant company, who issued and delivered the policy, and collected the premium, had knowledge of such excessive insurance, and the company did not

cancel the policy. The knowledge of an agent having such powers, and performing such duties, is held to be the knowledge of the company, and precludes the company from claiming a forfeiture of the policy on the ground of non-compliance with the covenant against other insurance.

This now seems to be the uniform rule upon the subject, and is not open to question.

*Cooley on Insurance*, 2479–2482; *Ostrander on Fire Insurance*, Sec. 243, 69 *Fed.*, 71; *Bank on Insurance Co.*, 58 *Minn.*, 492; *Insurance Co. vs. Barringer*, 73 *Ill.*, 230; *Insurance Co. vs. Norwood*, 69 *Fed.*, 71; *Pitney vs. Insurance Co.*, 65 *N. Y.*, 6.

*Mr. Ostrander* says: "When other insurance was existing at the time of the writing of the policy in suit, and was known to the agent of the company who wrote it, the insurer will be estopped from setting up such other insurance as a defense to a claim for loss, notwithstanding no notice and consent had been expressed in writing. This has been held with great uniformity, in disregard of the stipulation in the policy that no agent of the company has authority to waive any of its conditions, except by distinct and specific agreement endorsed thereon. The Courts appear to have based their decisions upon the equitable principle that the insurer having accepted the premiums with full knowledge of the insurance, ought not to be permitted to escape the performance of the obligation it has assumed, and for which it has received the consideration demanded."

And quoting from *Mr. Cooley:* "The power of general agents to waive conditions and forfeitures is also conceded to agents authorized to issue and deliver policies. Such agents are regarded as having the same power to waive conditions in policies as the companies themselves. The term 'local agent' does not in itself convey any meaning as to the extent of the agent's power. It simply means that the agent represents the company at the particular place or locality. It may, however, be generally assumed that a local agent is entrusted with the business of the

company in his locality. If he is, he has general authority to act for the company, and can waive conditions and forfeitures unless his authority is specifically limited, to the knowledge of the insured."

We think the inventories of 1905 and of 1906, which were admitted in evidence, and which dicslose the kinds of goods in stock, with their values, although not so full and particular as might be expected or desired, substantially comply with the requirements of the policy, and are inventories within the meaning of the iron safe clause. They are sufficient to inform the company, with reasonable certainty, of the character, quantity and value of the goods in stock, and that is all that is required.

And, although the inventory of January, 1905, was not continued to be kept in such place as the policy named (it having been removed from the fire-proof safe of the company's agent at Middletown when the inventory of 1906 was placed therein), nevertheless if it was preserved and actually produced for the inspection of the company as required, it was sufficient, provided you believe the entries thereon are correct and true. It would not matter where it was kept, provided it was safely kept, and produced, if required, at the proper time.

*Niagara Fire Ins. Co. vs. Heflin (Ky.)* 60 *S. W.*, 393.

While the iron safe clause provides that a set of books shall be kept by the assured which shall clearly and plainly present a complete record of purchases of stock from date of inventory, it does not mean that such record must necessarily be in book form. Invoices of goods purchased, if they cover all goods purchased since the date of inventory, and are produced for the inspection of the company in a reasonable time, furnish a substantial compliance with this requirement of the policy. And more especially is this so, if the company directs the assured to procure invoices, or duplicates thereof, showing said purchases.

*Elliott on Insurance, Sec. 315*, and cases there cited.

And it matters not if such invoices were not kept in the exact place or method mentioned in the policy, provided they were actually preserved, and produced for the inspection of the

company in a reasonable time.

2 *Cooley's Briefs on Insurance*, 1825, and cases there cited.

Notwithstanding the fact that the plaintiff in his proof of loss stated his total loss or damage to be about $4700, he is not thereby precluded from asserting such statement to be erroneous, and explaining the error if he can, and proving upon the trial a greater loss than the amount claimed in such proof of loss.

We now come to a consideration of the more important questions raised in the case, and which we could not examine with much care during the progress of the trial, and in ruling upon the admissibility of testimony. These questions are: (1) Were the books which purported to be books of daily cash sales of stock from date of inventory, such books as are contemplated by the provisions of the iron safe clause?

(2) Were the inventories, books or papers, required by said clause to be kept, and produced for the inspection of the company, so produced in a reasonable time, and in substantial compliance with the policy?

The principles of interpretation applicable to contracts of insurance are the same as those which obtain in the case of other contracts, subject to the exception that insurance contracts should be interpreted most strongly against the insurer for the reason that it is the insurer's language that must be interpreted

*Liverpool Ins. Co., vs. Kearney*, 180 *U. S.*, 132;

*Dover Glass Works Co. vs. Ins. Co.*, 1 *Marvel*, 45.

In the case of *Insurance Company vs. Kearney*, 180 *U. S.*, 132, Mr Justice Harlan said that "in the interpretation of insurance contracts the law does not require a literal interpretation. It only interprets the contract so as to do no violence to the words used, and yet to meet the ends of justice.

"The covenant in the policy to keep a set of books showing a complete record of business transacted, including all purchases and sales, both for cash and credit, should not be interpreted to mean such books as would be kept by an expert bookkeeper or accountant in a large business house in a great city. That provision is satisfied if the books kept were such as would fairly

show to a man of ordinary intelligence all purchases and sales, both for cash and credit."

The object of the iron safe clause of the policy is to facilitate the ascertainment of the extent of the loss, and prevent misrepresentation and fraud on the part of the insured,

*Western Assurance Co. vs. Redding,* 68 *Fed.,* 708; *McNutt vs. Ins. Co.,* 45 *S. W.,* 61; *Jones vs. Ins. Co.,* 38 *Fed.,* 19; *Georgia Ins. Co. vs. Allen,* 119 *Ala.,* 436; *Ins. Co. vs. Dudley,* 65 *Ark.,* 240; *Ins. Co. vs. Cummings,* 78 *S. W.,* 378; *Ostrander on Fire Insurance, Sec.* 303.

In the case of *Dover Glass Works Co.* (*supra*), Chancellor Wolcott in delivering the opinion of the Court of Errors and Appeals, said:

"An insurance in relation to property is a contract whereby the insurer becomes bound, for a definite consideration, to. indemnify the insured against loss or damage to certain property named in the policy, by reason of certain perils to which it may be exposed. It is competent for the insurer to prescribe the terms and conditions upon which it will take the proposed risk, provided they are not illegal nor contrary to public policy. The acceptance of these conditions consequently imposes upon the insured the duty of a substantial compliance therewith, and any neglect thereof in any material respect, unless waived or condoned, will release the insurer from liability in case of loss, whether it can be traced to such neglect or not. Now, as forfeitures are not favored, these and similar conditions are always construed strictly, so that the party claiming a forfeiture by reason of a violation thereof will not be permitted to deprive the other party of the benefits of the right to indemnity for which he contracted, if there is any doubt or uncertainty as to the terms of such conditions, the extent of their application, or the acts which constitute the alleged breach. Freedom from ambiguity in both these respects is absolutely essential to the maintenance of a plea in bar in an action to recover a loss covered by the policy

in which such clauses are contained."

Clearly the provision of the policy which requires the insured to keep books which shall clearly and plainly present a complete record of business transacted, including sales both for cash and credit, from date of inventory, is not illegal nor opposed to public policy.   It may be said that it is a very reasonable provision, and entirely consistent with public policy.   But it is also true that such a provision, the breach of which works a forfeiture should be construed strictly, and only a substantial compliance with its terms required.

A demand by the duly authorized agent of the company for all the books and papers of the insured is the demand of the company, and it is the duty of the insured to comply therewith in a reasonable time; and if such agent is informed by the insured that the books and papers produced were all the books and papers kept by him, then the agent of the company had a right to rely on such information and was not bound to inquire in detail whether or not certain other books and papers not produced, though required to be, were, as a matter of fact, kept by the insured.

The evident purpose of the clause is to enable the company, by means of accurate records of the business of the insured, to ascertain with substantial accuracy the value of the stock of goods destroyed by fire.

It is our opinion that the plaintiff's books of daily cash sales do substantially comply with the requirements of the contract in that behalf, and we think there is ample authority, as well as reason, for such conclusion.

To hold otherwise would, we think, impose an unreasonable and unusual burden upon the insured without any corresponding advantage or good to the company.   Books showing the daily totals of cash sales certainly show with substantial certainty the extent to which the stock has been depleted, and such books, together with the last inventory, and books, or invoices, showing all purchases since, will enable the insurer to ascertain the value of the stock lost by the fire, and the loss to the insured.   It cannot be assumed that the insured intends, by such a method of

keeping his books to defraud the company; and even if the goods sold were described in a general way in said books, which is all that is contended for, we do not see how fraud or misrepresentation could be thereby prevented. To accomplish such object it would be necessary to give not only the items, but the names of the persons from whom the goods were bought, and perhaps other and fuller particulars.

In the case of *Pelican Insurance Company vs. Wilkinson*, 53 *Ark.*, 363, the Court, it is true, held to a strict compliance with the terms of the policy in respect to the cash sales books, and books like those before us were considered insufficient. That case we admit is in conflict with those which support the position we have taken.

But in the later case in the same State—*Mutual Insurance Company vs. Dudley*, 65 *Ark.*, 240—there was no record of purchases at all, and the Court necessarily held that the insured had not complied with his covenant. In *Everett vs. Insurance Company*, 121 *Ga.*, 228, the Pelican case was approved, but the Court said it went further than they were called on to go, and that a more liberal rule had been laid down in *Liverpool Insurance Company vs. Ellington*, 94 *Ga.*, 786, in which it was held to be a compliance with the contract, if the cash sales books were kept in such a manner that, with the assistance of those who kept them, the amount of sales could be ascertained, and cash transactions distinguished from those on credit.

Such were the authorities mainly relied upon by the defendant. There were two other cases cited, viz: 82 *Mo. App.*, 515, and 65 *Ill. App.*, 37, but the policies before the Court in those cases required that the books should show a detailed statement of the sales, which language is not found in the policy we are considering.

We will now notice the cases cited by the plaintiff.

In *Bank vs. Cleland*, 82 *S. W.*, 337, the only record of cash sales was the bank book of the insured showing his daily deposits. The trial Court charged as follows: "The insured preserved all of his original invoices showing the amount of goods purchased,

that he deposited his cash sales in the appellant's bank each day, thereby preserving a complete record of the cash sales." Such instruction was held on appeal not to be erroneous.

In a very able opinion delivered in the case of *Western Assurance Company vs. Redding*, 68 *Fed*. 708, the Court said: "It is insisted that the accounts of goods purchased should have set out the specific articles, and the value of each, and that the account of cash sales should have been equally particular as to the articles sold and the price; for it is argued, the insured may have sold goods at one-tenth of their cost price, for aught that appears in the entries of cash sales. If these accounts were to have been thus kept, thus itemized, why not have said so? If the accounts of purchases and sales were to be so itemized, why take stock at all? The credit sales are itemized, as is not only customary, but necessary."

We think the law is very clearly stated in the case of *Malin vs. Mercantile Insurance Company (Mo.)* 80 *S. W.*, 56, wherein the Court said:

"The inventory required to be made once a year was made in August previous to the fire. It contained an itemized account of the merchandise then on hand, and furnished the defendant a full and detailed account of the merchandise in the store at the time it was made, and the bills of what had been subsequently bought and put in the store, and showed all the additions made to the stock after the inventory was taken; but there was no itemized account of what had been sold for cash—no bill of particulars. The amount of cash taken in was entered daily in a book kept for that purpose, and the aggregate of cash taken in was shown to be $1,949. The sales on credit were shown to have been $147.45. The average per cent. of profit at which the plaintiff sold was said by him to be 20 per cent. above the cost price; hence all the data were present from which an approximately correct estimate of the contents of the store at the time of the fire could have been readily made. But it is contended that this was not a compliance with the requirements of the policy in respect to keeping a set of books. That requirement reads as follows: "The assured

shall keep a set of books, which shall clearly and plainly present a complete record of business transactions, including all purchases, sales, and shipments, both for cash and credit, from date of invoice." A literal compliance with this provision of the policy would require the assured to record each article sold, its cost, the price sold for, and the name of the purchaser. We do not think a failure to comply literally with this provision of the policy should work a forfeiture. The purpose of the requirement was that, in case of loss or damage, the assured would have kept such book accounts of his invoices, purchases, and sales as would show the amount of goods on hand at the time of the fire, and thus furnish data from which to make a reasonably correct estimate of the loss or damage. We think the plaintiff, by the production of the invoice taken in August previous to the fire, his bills of purchases after the invoice, and his daily cash sales and sales on credit made after the taking of the invoice, furnished the data by which the amount and value of the goods in the store at the time of the fire could have been reasonably estimated, and that he ought not to be held to have forfeited his policy for having failed to literally comply with the clause of the policy under consideration."

Were the inventories, books and papers which the iron safe clause provided should be kept, and produced for the inspection of the company, so produced in a reasonable time, and in substantial compliance with the terms of the contract?

It is contended by the plaintiff that he was not required to produce the inventory of 1905, because the adjuster did not ask for it, and made no objection to its absence at the time he examined the other inventory, books and papers; and also because the company in a letter dated February 20, 1906, and sent to the plaintiff, gave as one of its reasons for rejecting his proof of loss that the inventory of 1906 was not sufficient, but made no objection to the non-production of the inventory of 1905. It is also urged by the plaintiff that the inventory of 1905 was not necessary to a substantial compliance with the contract, for the reason that the inventory of 1906 which was produced, was the last one taken, was taken in conformity with the policy, and was the only

one necessary to be considered in determining the amount of the plaintiff's loss.   It is also contended by the plaintiff that even if the production of the inventory of 1905, and the missing invoices, or duplicates thereof, were required, they were produced at the trial of the cause, and that such production was in a reasonable time and a substantial compliance with the requirements of the policy, under all the circumstances.

And the plaintiff further contends that the said letter was tantamount to a denial of liability and refusal to pay, and he was not therefore required to produce any inventory or other books and papers after the receipt of the letter and before the trial. The said letter is as follows:

"February 20th, 1906.

Mr. Solomon M. Rosenberg,
    Middletown, Del.,
Dear Sir:

We are in receipt of a paper, signed by you, purporting to be a proof of loss, in which reference is made to Policy No. 468, issued to you by the agents of this company at Middletown, Del., and in which reference is also made to a fire which is said to have occurred on the 18th day of January, 1906.

We hereby give you notice that this company cannot accept said paper as a proof of loss, for the following, among other reasons, to-wit:

1st.   The paper does not comply with the requirements of the Iron Safe Clause, attached to said policy and made a part thereof.   The alleged inventory of January 5th, 1906, outside of two or three pages, consisted merely of columns of figures, under general title of "Stock" at heads of pages, and without lot numbers or any other designation of the articles, which is not such an inventory in detail as is required by the provisions of the Iron Safe Clause.

2nd.   A set of books clearly and plainly presenting a complete record of business transactions, including all purchases, sales and shipments, both for cash and credit, from date of inven-

tory, as provided for in the Iron Safe Clause, has not been produced by you for the inspection of this company.

3rd. The so-called inventory of merchandise purchased since the purported inventory of January 5th, 1906, is not in compliance with the conditions of the said Iron Safe Clause, for the reason that all purchases since the date of a properly detailed inventory should be shown by the bills of purchase themselves or by duplicates thereof.

4th. The said so-called inventory contains items which were not covered by the policy, in the nature of store furniture and fixtures.

5th. The list of items alleged to be have been totally destroyed or missing was made up from memory.

6th. A claim for damage to articles not destroyed is largely in excess of a proper amount and cannot be entertained.

Therefore, for the reasons above stated, as well as other reasons, not necessary to mention, the said so-called proof of loss is rejected and is held in the office of this company subject to your order.

Yours truly,

R. J. TAYLOR,

*Manager Loss Department.*"

These contentions of the plaintiff are all denied by the defendant; and we are asked by the defendant to instruct you to return a verdict in its favor. This we decline to do because we think the case should be submitted to the jury, and determined by them, upon a careful consideration of all the evidence.

We have also been requested by the defendant to charge you that when the iron safe clause of the policy provides, as in this case, that the insured shall produce his books and inventories for the inspection of the company, it is the duty of the insured to do so within a reasonable time; and that producing said books and inventories at the trial of the cause is not a production of the of the same within a reasonable time, especially where demand for the same, by the company or its agent, has been made.

We do say to you that all the books and papers that the plaintiff was required by the said iron safe clause to produce for the inspection of the company should have been produced in a reasonable time, but we cannot say, as matter of law, that producing such books and papers at the trial of the cause is not a production of the same in a reasonable time. That is, we think, a question to be submitted to and determined by the jury under all the facts and circumstances of the case as disclosed by the evidence.

But we further say for your assistance and guidance in reaching a conclusion upon this point, that the evident purpose of this, as well as other provisions of the iron safe clause, was to enable the company to ascertain with reasonable certainty the extent of the loss of the insured, and that it is essential to the plaintiff's recovery that the books and papers required to be produced, should have been produced in conformity with the agreement.

It is, therefore, gentlemen of the jury, for you to determine, after considering all the evidence, whether such books and papers were produced in a reasonable time, taking into consideration the purpose for which they were to be produced, and also any and all facts and circumstances tending to show whether they were so produced.

The Supreme Court of this State in the case of *Barnesville Manufacturing Company vs. Love*, 4 *Pennewill*, 569, said:

"As a general rule it is the province of the Court to construe written contracts, and when the time   *   *   *   can be ascertained by the mere construction of the written contract between the parties, this should be done by the Court. So also where the time is fixed, the question as to what was a reasonable time is generally a question of law for the determination of the Court; but where the facts are in dispute, what is a reasonable time is often proper to be determined by the jury under all the circumstances of the case."

*Mr. Cooley* in his work (*supra*) says:

"Primarily and ordinarily the question as to whether, under

all the circumstances, the notice or proofs of loss were delivered in a reasonable time, is one for the jury," and cites in support of this proposition a large number of cases.

*American Cent. Insurance Company vs. Ware, (Ark.)46 S.W.,* 129.

It has been held that where the question of reasonable time is one affected by many different circumstances with respect to which no definite rule of law has been laid down, it is a question for the jury.

*Bouvier's Law Dictionary, Vol.* 2, 829.

On account of the number and importance of the questions raised we have stated to you at some length the law applicable to this case, and which must govern you in reaching a verdict. But you are the sole judges of the facts, of the reliability of the witnesses, and of the truthfulness of their testimony.

In order that the plaintiff may recover you must be satisfied from the weight or preponderance of the evidence, that his loss was caused by the fire as he has alleged, and that his books and papers, which have been admitted in evidence, and from which the extent of his loss is to be ascertained, were honestly and fairly kept, and the entries therein are correct and true.

If you are so satisfied, and also believe that the plaintiff has substantially performed or complied with all the conditions and requirements of his contract with the defendant company, your verdict should be for the plaintiff for the full amount of the policy sued on, with interest from a period of sixty days after the filing of his proofs of loss, provided you find that the plaintiff's entire loss, resulting from the fire, was at least $6,000, the total amount of insurance on his stock.

If you should not be satisfied that the plaintiff has established his right to recover in this action, your verdict should be for the defendant.

Verdict for plaintiff for $2,138.

*Per Curiam:*

We have carefully considered the several assignments of error in this case. And we are unanimously of the opinion that the learned Court below, in a very careful and comprehensive charge to the jury, correctly announced the law upon every essential element in the case. The judgment is, therefore, affirmed on the opinion of the Court below.