ARKANSAS MUTUAL FIRE INSURANCE COMPANY *v.* STUCKEY.

Opinion delivered December 16, 1907.

1. FIRE INSURANCE—METHOD OF BOOKKEEPING.—Where an insured merchant's books were kept in an apparently intelligible condition so as to indicate with reasonable certainty the amount of purchases and sales from day to day, the daily sales being entered in gross at the end of each day, the court properly left to the jury to determine whether the condition in the policy as to the keeping of books had been "substantially" complied with, as required by Kirby's Digest, § 4375a.   (Page 36.) ·

2. SAME—FORFEITURE—BURDEN OF PROOF.—The burden is on the insurer seeking to establish a forfeiture under the terms of the policy.   (Page 37.)

3. SAME—PRODUCTION OF INVOICES.—Under a requirement in a fire insurance policy that the insured shall, as often as required, produce the invoices of goods purchased since the last inventory, "or certified copies thereof, if the originals be lost," no forfeiture resulted from the assured's failure to produce such invoices or copies of them, if no demand therefor was made by the insurer.   (Page 38.)

4. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—A new trial on the ground of newly discovered evidence was properly denied where it was not shown that appellant used due diligence in discovering and producing such evidence.   (Page 38.)

5. INSURANCE—STATUTORY PENALTY—PROSPECTIVE OPERATION.—The act of March 29, 1905, imposing a penalty and attorney's fee upon an insurance company failing to pay its liability within the time specified in its policy, does not apply to policies issued before the passage of the act.   (Page 38.)

Appeal from Pulaski Circuit Court; *Edward W. Winfield,* Judge; affirmed.

*J. W. & M. House,* for appellant.

1.  The method of bookkeeping resorted to by the insured, as shown in the evidence, was not a compliance with the requirements of the policy.   The object of this clause of the policy is to ascertain the quantity and value of the property destroyed,

yet under the system adopted that was impossible.    53 Ark. 357; 65 Ark. 249; 48 S. E. 918.

2. It is shown that the invoices were not kept in the safe, hence neither the iron safe clause nor the terms of the policy were complied with.    61 S. W. 963; 67 S. W. 153; 80 S. W. 283.

3. It was error to tell the jury that the expression "also the last preceding inventory," contained in the policy, must be taken to mean the one of December, 1904, whereas that expression evidently meant that, if an inventory had been taken prior to the one of December 5, 1904, it should be kept.

4. The promises of the insured in his application to keep certain books, inventories, invoices, etc., were by the terms of the application and policy made warranties, and compliance therewith is indispensable to recovery.    102 S. W. 195; 61 Ark. 207; 62 Ark. 43; 65 Ark. 240; 31 S. W. 321; 33 S. W. 554; 78 Am. St. Rep. 216.    There can be no substantial compliance, where there is no compliance at all.    There is no pretense, even, in this case that there was a complete set of books kept showing the details of the business.    61 S. W. 962; 77 S. W. 424.

5. The court erred in giving judgment for an attorney's fee and for penalty on the amount found to be due by the verdict of the jury.    102 S. W. 226.

*M. M. Stuckey* and *J. W. Phillips,* for appellee.

Concede that the judgment for attorney fee and penalty was erroneous, and offer to remit.    Substantial compliance with the terms of the iron safe clause is all that the law requires, and substantial compliance is established by the evidence.    51 L. R. A. 699; Kirby's Digest, § 4375a; 37 W. Va. 272; 115 Ala. 213; 82 Ark. 476; 58 Ark. 565.

McCULLOCH, J.    This is an action to recover upon a fire insurance policy issued by appellant upon a stock of merchandise.    The plaintiff recovered judgment below, and the defendant appealed.

Violation of the following clauses of the policy, which by its terms are made warranties, is pleaded in defense:

"1. The assured shall take a complete itemized inventory of stock on hand at least once in each calendar year; and, unless

such inventory has been taken of the property covered by this policy within twelve calendar months prior to the date thereof, this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

"2. The assured shall keep a set of books which shall clearly and plainly present a complete record of business transacted in reference to the property herein mentioned, including all purchases, sales and shipments, both for cash and credit, from the date of the inventory provided for in the preceding section, and during the life of this policy, or this policy shall be null and void.

"3. The assured shall keep such books and inventory and also the last preceding inventory, if such has been taken, and also all books kept in his business since the date of such last preceding inventory, securely locked in a fire-proof safe at night, and at all times when the building mentioned in this policy is not actually open for business, or shall keep such books and inventories in some secure place not exposed to a fire, which would destroy the aforesaid building, and after a fire shall produce all such books and inventories and deliver the same to this company for examination, or this policy shall be null and void, and no suit or action shall be maintained thereon for any such loss; it being agreed that the receipt of such books and inventories and the examination of the same shall not be an admission of any liability under this policy, nor a waiver of any defense to the same."

These several provisions constitute what is termed the "iron safe clause" of the policy.

Violation of another clause of the policy is also pleaded, being as follows:

"The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to an examination under oath by any person named by this company, and subscribe the same; and, as often as required, shall produce for examination all books of accounts, bills, invoices and other vouchers, or certified copies thereof, if originals be lost, at such reasonable place as may be designated by this company or its representatives, and shall permit extracts and copies thereof to be made."

The evidence shows affirmatively and indisputably that the first clause enumerated above was strictly complied with by the assured. The policy was issued on February 10, 1905, and the fire occurred within the calendar year during which the policy was issued.

The assured also kept a set of books, which were preserved in an iron safe and produced after the fire; but it is claimed that these books were not kept in compliance with the requirements of the policy, in that the sales, cash and credit, were not itemized. The daily sales were entered in gross on the books at the end of each day's business. In all other respects the books came up to the requirements of the policy. Was this sufficient?

One of the members of the firm insured under the policy testified as to the amount of the loss, and produced the books before the jury. He testified in detail concerning the amount of the loss, the amount and value of goods according to the last preceding inventory, the amount of purchases and sales since then, the average profits on sales, and finally the amount of stock on hand at the time of the fire. His testimony was not disputed.

A consideration of the requirements of the policy must be with reference to the statute providing that in actions upon fire insurance policies upon personal property "proof of a *substantial* compliance with the terms, conditions and warranties of such policy, upon the part of the assured, * * * shall be deemed sufficient, and entitle the plaintiff to recover in any such action." Kirby's Digest, § 4375a.

This statute has been applied, in several decisions of this court, to the method of bookkeeping employed by the assured in considering clauses in policies similar to that in this case. *People's Fire Insurance Assoc.* v. *Gorham,* 79 Ark. 160; *Security Mutual Ins. Co.* v. *Woodson,* 79 Ark. 266; *Arkansas Mutual Fire Ins. Co.* v. *Woolverton,* 82 Ark. 476.

In the Woolverton case the books were kept in precisely the same manner as in this case, the only difference between that case and this being that in that one there was evidence introduced to the effect that this was the customary method of bookkeeping in vogue among the merchants in that locality.

In the case of *Western Assurance Co.* v. *Altheimer,* 58 Ark. 565, the same method had been practiced as in this case except

that the amount of each sale was recorded (not mentioning the article sold). Expert witnesses testified that this was considered good bookkeeping, and the court held it to be sufficient compliance with the terms of the policy. That was before the passage of the statute referred to above. The court there said: "The parties had not stipulated as to the *particular* kind or system of bookkeeping required, to show a complete record, etc. They had stipulated for a 'set of books,' but, the plaintiff affirming, and the defendants denying that a 'set of books' had been kept as required by the policy, the court very properly, upon this state of the contention, instructed the jury what the terms of the contract imposed, leaving them to determine from the testimony of the experts, the books themselves, and other evidence, as to whether the conditions had been fulfilled."

Learned counsel for appellant distinguish the present case from that one on the point that no expert testimony was introduced showing that this was considered good bookkeeping according to common usage. They also rely on the case of *Pelican Insurance Co.* v. *Wilkinson,* 53 Ark. 353, where the method of bookkeeping there shown to have been practiced was held to be insufficient. In the latter case, however, a specimen of the bookkeeping is quoted which is wholly unintelligible, and the court so declared it.

We can not say, as a matter of law, that the method of bookkeeping shown in the present case was sufficient. That was a question of fact for the jury. It devolved upon the insurance company, which claimed a forfeiture, to show that the method of bookkeeping practiced was not sufficiently intelligible to enable an adjuster to ascertain the amount and value of the property insured and lost. Of course, where the books themselves show that they are not fairly intelligible, as in the Wilkinson case, *supra,* the court should so declare; but where, as in this case, the books are kept in a manner apparently in intelligible condition, so as to show a record of the business transacted and indicate with reasonable certainty the amount of purchases and sales of merchandise from day to day, then it is the duty of the company to show wherein they fall short of the standard of bookkeeping required by the terms of the policy. To hold otherwise would be to disregard the plain terms of the statute,

which declares that substantial compliance only with the terms of the policy is required.

A forfeiture is also claimed on the ground that the assured failed to preserve the invoices of goods purchased after the inventory of December 5, 1904, was taken. The invoices were not kept in the safe and were burned. The policy did not require the keeping of the invoices in the safe. The only requirement of the policy with respect to the invoices of purchases is that the assured should, as often as required, produce them, "or certified copies thereof, if the originals be lost." The evidence shows that the amounts of the purchases were entered in the merchandise account on the books. No demand upon the assured for production of copies of the invoices was ever made, there was no refusal to produce them, therefore no forfeiture resulted.

The only remaining ground for reversal insisted upon is that the court should have granted a new trial on account of newly discovered evidence. After verdict and judgment the defendant filed affidavits of certain persons tending to show that the assured was guilty of fraud in taking large quantities of goods out of their store immediately before the fire and concealing them, and that the quantity of goods left in the store at the time of the fire was much less than claimed by the assured. We think that sufficient diligence in discovering and producing this testimony was not shown to warrant the court in granting a new trial. This was a matter, to some extent, within the sound discretion of the trial court, and we do not think this discretion was abused.

The court rendered judgment, in addition to amount of the verdict, for attorney's fees and penalty, under the act of March 29, 1905. This was erroneous, as the policy was issued before the passage of the statute. *Arkansas Mutual Ins. Co.* v. *Woolverton, supra.*

Appellee offers to remit this amount, which is ordered done. The remainder of the judgment is affirmed.