ROYAL INSURANCE CO. OF LIVERPOOL *v.* MORGAN.

Opinion delivered January 24, 1916.

1. FIRE INSURANCE—INVENTORY—TIME OF TAKING—QUESTION FOR JURY. —The finding of a jury that an inventory, which the insured testified had been taken within thirty days after the issuance of a policy of fire insurance, had been taken within that time, held conclusive.

2. FIRE INSURANCE—INVENTORY—LUMBER—DIMENSIONS.—An inventory, required to be given by a policy of fire insurance on certain lumber, held sufficient, which gave the dimensions of the lumber in each of several piles, and stated the total number of feet in each pile, but did not give the dimensions of the piles.

3. FIRE INSURANCE—LUMBER—INVENTORY.—Where plaintiff alleged the loss of 522,000 feet of lumber by fire, his failure to correctly itemize a small portion thereof, in making an inventory of all the lumber, will not avoid the policy.

4. FIRE INSURANCE—SET OF BOOKS.—In an action on a policy of fire insurance for the loss of lumber, *held*, under the evidence that the jury was warranted in finding that the record of logs scaled, together with the invoices showing the amount of shipments, constituted a compliance with the clause of the policy requiring books to be kept presenting "a complete record of business transacted, including all purchases, sales and shipments for both cash and credit."

5. FIRE INSURANCE—INSPECTION OF BOOKS—FINDING OF JURY.—The verdict of the jury held conclusive on the question whether the insured failed to deliver his books and other papers to the insurance adjuster, for his inspection.

6. FIRE INSURANCE—LUMBER—CHATTEL MORTGAGE—FORFEITURE.—A policy of fire insurance on certain lumber held not to be forfeited by the placing of a chattel mortgage on the lumber, when the agent of the insurance company, knew of the transaction and promised to make an endorsement on the policy, to prevent a forfeiture.

Appeal from Ouachita Circuit Court; *C. W. Smith,* Judge; affirmed.

*H. S. Powell,* for appellant, *J. W. Warren,* of counsel.

1. No inventory was taken within thirty days of issuance of policy. 52 L. R. A. 70; 85 Ark. 579; 82 *Id.* 476; 94 *Id.* 228; 65 *Id.* 240.

2. No books were kept as provided by the terms of the policy. 52 L. R. A. 70; 65 Ark. 336; 94 *Id.* 228.

3. Books, bills, invoices, etc., were not produced and delivered as provided. 65 Ark. 336.

4. The policy was forfeited by false statements in proof of loss. 62 Ark. 350.

5. Policy voided by execution of deed of trust.

6. Verbal testimony not admissible to establish extent of loss. There was error in the instructions. 65 Ark. 240.

*Gaughan & Sifford,* for appellee.

1. Only *substantial compliance* with the *fine print* terms of insurance policies is required and that question is one of fact for the jury. Sections 4375a and 4382, Kirby's Digest. 107 Ark. 170-1.

2. An inventory was taken August 25, 1913, and it complies with the policy. 82 Ark. 476; 94 *Id.* 228.

3. The books were properly kept. 94 Ark. 229; 79 *Id.* 164, 269.

4. The books etc., were presented to the adjuster.

5. There were no false and fraudulent representations in the proof of loss. *"Laborantur in moutes nas cetur rediculus mus."* 94 Ark. 168. The knowledge and remark of the agent was a waiver of any forfeiture. 88 Ark. 506; 65 *Id.* 348; 87 *Id.* 72; 79 *Id.* 475; 82 *Id.* 150; 111 *Id.* 435.

6. Verbal testimony was admissible as to the appearance of the amount of lumber on the yard just before the fire. 82 Ark. 476; 85 *Id.* 37. The books were also evidence and intelligible to a lumberman. 85 Ark. 37.

7. There is no error in the instructions.

McCULLOCH, C. J. This is an action on a fire insurance policy issued by appellant insurance company to appellee on a stock of yellow pine lumber. The

amount of the policy is $4,500, and it is alleged that at the time the fire occurred the stock of lumber consisted of 350,000 feet, which was all destroyed.

The verdict in appellee's favor was for the sum of $4,000. Appellant defended on the ground that there were various forfeitures of the policy, which will be discussed in detail later, and also that there were only 65,000 feet of lumber destroyed. There is a sharp conflict in the testimony as to the amount of lumber on hand at the time the fire occurred, the appellant having adduced proof tending to show that it was only 65,000 feet, whereas the testimony of the appellee himself and the witnesses he introduced tends to show that there was more lumber on hand than that claimed in the complaint, or about that quantity. There being a conflict in the testimony on that issue, we must treat the verdict of the jury as having settled it in appellee's favor.

(1) The first contention is that there was a forfeiture by reason of the failure of the assured to make an inventory in accordance with the requirements of the policy, which provided that "unless an inventory has been taken within twelve calendar months prior to the date of the policy, the assured should take such inventory within thirty days of the issuance of the policy," otherwise the policy should be void. Appellee exhibited to the jury what purported to be an inventory of all the stock of lumber on hand, which said inventory appeared to have been taken on the 25th day of August, 1913, within the thirty days after the issuance of the policy, and he testified that he took that inventory on the date named. In other words, his testimony was sufficient to warrant a finding that the inventory exhibited was taken within thirty days, and while there are some indications about the date of the inventory which might have warranted the jury in finding that it was not in fact taken at that time, yet the jury has credited the testimony of appellee and found in his favor on that issue, so we must treat the issue as settled by the verdict.

(2) It is insisted that the inventory is not sufficient to constitute compliance with the terms of the pol-

icy, even though it was taken within thirty days. The inventory gives the dimensions of the lumber in each pile, and states the total number of feet in each pile, but it does not show in any way the dimensions of the piles, and it is contended that that is a material omission, for without that information the adjuster for the insurance company could not verify the accuracy of the items set forth. We think that it is a strained contention to say that the inventory is not sufficient on that account. Especially is that true in construing it in the light of our statute, which only requires substantial compliance with the terms of a policy.

(3)   There is one item on the inventory, however, which is not specific, as stated above, and that is an item of 40,000 feet of lumber described as being on the tram. The inventory showed 522,000 feet of lumber on hand at that time, and that part which was not itemized was only a small portion of the whole. It was shown that it was lumber lying in bulk near the tramways, which could not be conveniently measured, and we are of the opinion that the failure to itemize that small portion of the total amount of lumber does not amount to a breach of the warranty with regard to taking inventory. We have said, it is true, that a mere summary does not constitute an inventory, (*Arkansas Mutual Fire Ins. Co.* v. *Woolverton,* 82 Ark. 476; *Arkansas Ins. Co.* v. *Luther,* 85 Ark. 579), but this is more than a summary, for it purports to give the items and the aggregate number of feet of each pile of lumber, except that portion which was lying on the trams.

(4)   It is next contended that there was a breach of the policy on account of the failure of the assured to keep a set of books showing a complete record of the business transacted, "including all purchases, sales and shipments, both cash and credit, from date of inventory." Appellee exhibited books showing an itemized scale of the logs which were sawed into lumber and placed on the yards subsequent to the taking of the original inventory, but it is not contended that any record was kept of the lumber put out on the yard after the said inventory

was taken.  The original invoices were kept in connection with those books showing the amount of lumber sold and shipped out.  The testimony shows that the rule among saw mill men is that the lumber will run on an average about 20 per cent more than the logs scale.  While there were no entries showing the amount of lumber, the books showing the log scale, when considered in the light of available information concerning the average amount of lumber which will be produced according to the standard scale of logs, affords sufficient means for ascertaining the amount of lumber on hand.  It is, in other words, substantial compliance with the terms of the policy, and that is all that the statutes of this State require.  It is not essential that the books be absolutely accurate, nor that the books themselves must show all the information available, sufficient to enable the adjuster to ascertain the precise amount of lumber on hand.  We are therefore of the opinion that the jury were warranted in finding that the record of the logs scaled, together with the invoices showing the amount of shipments, constituted compliance with the clause of the policy requiring books to be kept presenting "a complete record of business transacted, including all purchases, sales and shipments for both cash and credit."  *Queen of Arkansas Ins. Co.* v. *Forlines,* 94 Ark. 227.

(5)  It is also urged as grounds for forfeiture that the assured failed and refused to deliver his books, invoices, etc., to the agent of the company for inspection, as provided by the policy.  The testimony of the adjuster is to the effect that when he went to Stephens, Arkansas, to adjust the loss, he requested appellee to bring his books to the counting room of the bank at that place for his inspection, but that appellee declined to do that, and, on the contrary, invited him to go down to his (appellee's) home to inspect the books.  He stated that appellee furnished him only an inventory which purported to have been taken on April 20, 1914.  Appellee testified that the adjuster asked him if he kept books, and that he answered in the affirmative and told him that the

books were at his office; but that the adjuster didn't ask to see them. The jury passed on the question whether or not there was a failure to deliver the books and other papers to the adjuster for inspection and the verdict is conclusive of that issue.

The next contention is that there was a forfeiture because of false statements in the proof of loss with respect to an unrecorded chattel mortgage on the lumber, and also with respect to a considerable lot of lumber which it was claimed belonged to a Mr. Holt. It is sufficient to say in response to that, however, that there was evidence showing that the statement was not false, but was made in good faith under the belief that the lumber delivered by Holt belonged to appellee, and that the mortgage had been released. In fact, there is enough testimony to warrant a finding that all of the lumber belonged to appellee—that Holt had sold and delivered it to him—and that the chattel mortgage which appellee had executed on the property had been released.

(6) Another issue in the case was whether or not the policy was avoided by the execution of the chattel mortgage. During the life of the policy, and before the fire, appellee executed a chattel mortgage on the lumber to a bank to secure an indebtedness of $2,000. Appellant's agent who had authority to issue policies and make indorsements of consent thereon, and to collect premiums—the agent who issued this particular policy to appellee—was the cashier of the bank to which the chattel mortgage was given. The agent was present with the directors of the bank at the time the mortgage was executed, and the evidence shows that he was instructed to make the proper indorsements on the policy, and that the agent agreed to do so. There is some conflict in the testimony as to just what was said on that occasion, but the testimony warranted the inference that the language used on the occasion was understood by the agent to be a request that the proper indorsement be made on the policy to prevent a forfeiture, and that he agreed to do that. The evidence is undisputed, in fact, that the agent's conduct on that occasion amounted to a prom-

ise to make a proper indorsement on the policy to prevent a forfeiture, and it is therefore unnecessary to discuss the assignments of error with respect to the instructions on that issue. The agent, it is true, was also the agent of the bank, but that does not prevent his waiver from binding the insurance company. The loss payable clause was not in fact indorsed on the policy, and therefore there is no question in the case of the bank being entitled to recover anything. We have only to deal with the question of forfeiture on account of the mortgage being executed without consent of the company. It is not important whether there was a loss payable clause indorsed on it, but the question is whether the company through its agent manifested its consent. That being true, it is unimportant to consider whether or not the agent of the company was also the agent of the bank, for, as before stated, that did not lessen the binding force of his conduct as a representative of the insurance company. The subject of insurance agents acting in dual capacities is thoroughly discussed in the recent case of *Milwaukee-Mechanics Ins. Co.* v. *Fuquay*, 179 S. W. 497, 120 Ark. 330.

The only other assignment of error which we deem it necessary to mention is that which relates to testimony of witnesses adduced by appellee, giving an estimate of the amount of lumber on hand. Appellant introduced the same character of evidence tending to show that there was only a small amount of lumber on hand at the time the fire occurred, and this testimony was introduced by appellee, not only to show that appellant's estimate was not correct, but also for the purpose of corroborating appellee's claim as shown by his books and inventories of the amount of lumber on hand.

There are very numerous assignments of error with respect to the giving and refusing of instructions, but we are of the opinion that the disputed issues were sent to the jury on proper instructions, and that the verdict of the jury is supported by sufficient evidence.

Judgment affirmed.