SEABOARD INSURANCE COMPANY OF MARYLAND *v.* CAVER.

4-7493                                   183 S. W. 2d 922

Opinion delivered December 11, 1944.

*Verne McMillen,* for appellant.

*J. H. Lookadoo* and *McMillan & McMillan,* for appellee.

McHANEY, J. Appellants are seven fire insurance companies which had policies of insurance covering either the building or the stock of merchandise or both owned by appellee in Amity, Arkansas, and which property was destroyed by fire about 12 o'clock on the night of April 26, 1943.

Appellants not having paid appellee the amounts covered by their several policies after notice, proof of loss and demand, he brought separate actions against them and the Merchants & Planters Bank & Trust Company, hereinafter called the Bank, on September 14, 1943, to recover judgments against the several appellants for the amount of their several policies, and for penalties and attorneys' fees. The Bank was made a defendant because appellee had borrowed money from it and some of the policies had mortgage clauses attached in favor of the Bank and other of the policies had been assigned by appellee to it. Appellants defended the actions on two grounds: 1. That appellee failed to comply substantially with the Record Warranty Clause in each of the policies; and 2, that fraud was practiced on them by appellee in procuring insurance on the building and the stock of merchandise in excess of their actual value.

The cases were consolidated for trial which resulted in verdicts and judgments against appellants for the amounts sued for, with penalty and attorneys' fees, and this appeal followed.

Four questions are argued by appellant for a reversal of the actions: 1. Failure to comply with the Record

Warranty Clause; 2. Fraud practiced on appellants in over-insuring the property; 3. Error in giving appellee's instructions 1 and 2; and 4. Refusal to transfer to equity and consolidating cases for trial.

1. The Record Warranty Clause, attached to each of the policies, required appellee to make an inventory and keep a record of his purchases and sales which would at all times reflect the amount of stock on hand and to keep such records in a fireproof safe at night, or in some secure place not exposed to a fire which would destroy the building. Failure to comply with such clause is a good defense, but is an affirmative one and the burden is on appellants to show non-compliance. *Mutual Fire Ins. Co. v. Stuckey,* 85 Ark. 33, 106 S. W. 203. Our statute, § 7721, Pope's Digest, provides that "proof of a substantial compliance with the terms, conditions, and warranties of such policy" shall be sufficient to entitle the insured to recover in an action on a policy of fire insurance. In *Merchants Ins. Co. v. Barton,* 182 Ark. 725, 32 S. W. 2d 1069, we held that a substantial compliance with the Record Warranty Clause was all that is required under said section, and that said clause was complied with where an inventory was taken within a year, and a set of books, such as merchants usually keep was kept. Also that where duplicate invoices were substituted for ones which were destroyed by the fire, there was a substantial compliance. We there cited *Queen of Ark. Ins. Co. v. Malone,* 111 Ark. 229, 163 S. W. 771 and *Royal Ins. Co. of Liverpool v. Morgan,* 122 Ark. 243, 183 S. W. 198.

Here appellee produced his inventory of January 1, 1943, taken four months before the fire, and procured duplicate invoices of goods purchased for the originals destroyed in the fire and this was a substantial compliance with said clause in these respects. Appellee's record of sales consisted of sales slips made each day, but these were destroyed in the fire, but he produced duplicate deposit tickets, showing his deposits in appellee Bank from cash sales from his feed store in Amity. These tickets did not show on their face that they were deposits from the Amity store, but appellee testified that he took

the cash and checks from sales made each day to the Bank, received duplicate deposit tickets from the Bank and kept them in a separate place from his deposits from his other business in Arkadelphia. A book was kept at his home in which he kept his credit sales. As we understand it appellants concede that this was a proper record of credit sales, and that if a daily memoranda of cash sales had been entered therein, a substantial compliance with the Record Warranty Clause would have been shown. If, therefore, the duplicate deposit tickets had been pasted in that book, instead of keeping them in his office in Arkadelphia, why would this not have been a substantial compliance? And if that would be sufficient, why was it not sufficient to have them separate and apart from other slips showing deposits to the same account in his office? We think the records produced sufficient to take the question of compliance to the jury which was submitted in instruction No. 7 given at appellants' request. *Queen of Ark. Ins. Co.* v. *Malone, supra; Mutual Fire Ins. Co.* v. *Stuckey, supra.*

2. As to the question of fraud practiced in procuring an excessive amount of insurance on both the building and the stock, each of the policies provide that: ". . . this entire policy shall be void if the insured. has concealed or misrepresented in writing or otherwise any material fact or circumstance concerning this insurance or the subject thereof—or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after the loss."

Appellants contend that through fraudulent representations by appellee to their agents he procured insurance on the building and stock greatly in excess of their actual value and, after the fire falsely claimed there was a large amount of stock in the building in excess of the amount destroyed, and that he moved practically all the merchandise out of the building prior to the fire.

At the time of the loss, April 26, 1943, appellee had $2,000 insurance on the building and $7,000 on the stock of merchandise. We find no evidence in this record that

at the time these policies were issued, appellee made any representations to the agents of appellants. as to the value of the merchandise or the building, nor is there any evidence in the record that he moved practically all the merchandise out of the building prior to the fire, except there is some testimony of witnesses that shortly before the fire the stock seemed to be depleted. This testimony about the depletion of the stock was disputed. No witness testified that appellee removed any of the stock.

The inventory of stock taken January 1, 1943, which was exhibited to the adjuster for appellants and at the trial, is said to be false and fraudulent because, it is contended, the amount of merchandise shown thereon could not have been put in the building and leave room for aisles and office space so that it could be sold. The inventory showed stock of $8,271.64; purchases from January 1, to April 26, as shown by duplicate invoices, amounted to $8,279.55; sales as shown by deposit tickets in the Bank, and credit ledger sales during the same time, and cash on hand amounted to $7,845.55, from which an estimated profit of 15% was deducted and the remainder deducted from the amount of the inventory and sales left $9,882.47 as the actual inventory as of April 26, 1943. Now the jury, in response to a special interrogatory propounded to them at the request of appellants found that the value of the merchandise on hand on the date of the fire was $9,800. But appellants say this amount is demonstrably false as no such amount of merchandise could have been put in a building which was 60 ft. long, 20 ft. wide by 10 ft. high, unless taken out of the sacks and poured in the building. But appellants have not shown by demonstrable evidence that it was physically impossible for the claimed amount of merchandise to have been in the building at the time of the fire. Hence, we cannot say, as a matter of law, that the claimed amount of merchandise was not in the building. We think it was a question of fact for the jury as to whether he had the amount of stock he claimed and its finding is conclusive here. In other words, we are unwilling to hold as a matter of law that a fraud was practiced on appellants. The insurance

on the building was $2,000. This amount is said to be excessive, not for the purpose of defeating a recovery merely because overinsured, but as a further indication of fraud which would defeat recovery under the clause above quoted. We think this was also a question of fact for the jury.

3 and 4. Appellants argue that error was committed by the court in giving appellee's instructions 1 and 2 and in refusing to transfer to equity. We have carefully considered these assignments and find them without substantial merit. We think no useful purpose could be served by discussing them in detail and to do so would unduly extend this opinion.

We find no error and the judgments are accordingly affirmed.