THOMAS L. COPPI, DOING BUSINESS AS THE FACTORY BEAUTY SALON, APPELLANT, V. WEST AMERICAN INSURANCE CO., AN INSURANCE CORPORATION, APPELLEE.

516 N.W.2d 264

Filed May 10, 1994.    No. A-92-704.

Jeffrey A. Silver for appellant.

Robert V. Roach and Matthew J. Buckley, of Hansen, Engles & Locher, P.C., for appellee.

SIEVERS, Chief Judge, and IRWIN and MILLER-LERMAN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Appellant, Thomas L. Coppi, brought an action in the district court for Douglas County on an insurance policy issued by appellee, West American Insurance Co. The jury rendered a verdict for West American, and Coppi has timely appealed to this court. We reverse the judgment and remand the cause for a new trial because the district court erroneously instructed the jury that Coppi carried the burden of proving compliance with a record warranty provision in the policy.

## II. BACKGROUND

The record discloses that Coppi was the sole proprietor of The Factory Beauty Salon in Omaha, Nebraska. In April 1985, Coppi purchased a "Businessowners Policy" from West American. The policy provided for $10,000 in coverage in the event that the salon sustained a cash loss by theft. On March 16, 1986, the salon was burglarized. Among other things, the burglars absconded with the business' floor safe. Coppi filed a claim with West American for the property stolen as well as for $9,413, the amount of cash that Coppi claimed was in the safe when the burglary occurred. Pursuant to a provision in the insurance policy, West American demanded records from Coppi to substantiate the amount of cash that he alleged was in the safe when the burglary occurred. West American eventually

denied Coppi's claim for the cash on the basis that Coppi had not provided West American with records showing the amount of cash that was contained in the safe. Coppi subsequently brought this action based on the insurance contract.

At trial, Coppi and his employees testified regarding the financial records kept at the salon. They stated that upon having services performed, a customer would be issued a ticket reflecting the name of the hairstylist, the nature of the services performed, and the amount charged for the services. The customer would then present the ticket and pay for the services at a central front desk. At the end of the day, the total amount of services performed by each stylist would be entered on a daily ledger. The daily ledger, the cash, and the tickets would then be placed in the floor safe at the salon. Although Coppi would deposit checks in a banking institution, he would retain cash payments in the floor safe. The following morning, the amounts from the daily ledger would be entered on a weekly ledger, and, apparently, the daily ledger would be discarded. The weekly ledger would record the total amount of money that the salon took in each day and would break down the total according to cash payments and payments made by check. The weekly ledger would also record each day's total intake for each hairstylist. Every Tuesday the hairstylists, who were independent contractors, would be paid in cash, and the weekly ledger would then be discarded. According to Coppi, there would be no other written record of the cash taken in for any particular week.

The burglary occurred on Sunday, March 16. Coppi claimed that at the time of the burglary, the safe contained all of the cash taken in since the previous Tuesday and also contained the tickets and daily ledger from Saturday, the salon's previous business day. The weekly ledger, however, was not in the safe and was not taken in the burglary.

On March 18, 2 days following the burglary, Coppi paid the hairstylists for the previous week. Coppi and his bookkeeper testified that they were able to determine the amount of cash taken in for the previous Tuesday through Friday from the weekly ledger and that they were able to determine the cash taken in on Saturday by "reconstruct[ing]" the business done

on Saturday from the hairstylists' records and by phoning clients that had received services on that day. Coppi then discarded the weekly ledger that revealed the amount of cash that had been in the safe.

Coppi testified that he knew on March 16 that the safe contained over $10,000 in cash, but that he told the police he did not know how much money the safe contained. Coppi explained by stating, "It's not my business to let anybody else to know my business. I didn't feel comfortable for anybody to know that kind of money existed, even when the police asked." On March 19, the day after he paid his hairstylists based on the above-mentioned records, Coppi submitted a "Property Loss Notice" to his insurance agent, on which a question mark was placed in a space marked "Probable Amount [of] Entire Loss." When asked why he did not inform his insurance agent of the amount of cash that was in the safe, he stated that he "didn't think it was privy" for his insurance agent to know the amount of cash that was in the safe until a time when Coppi "felt comfortable with it."

Upon receiving notice of Coppi's claim, West American requested records showing the amount of cash contained in the safe at the time of the loss, relying on a provision in Coppi's policy, regarding coverage of cash and securities, that stated: "The insured shall keep records of all the insured property in such manner that the Company can accurately determine therefrom the amount of loss." This provision is often referred to as an "iron safe" or "record warranty" clause. 8 George J. Couch, Cyclopedia of Insurance Law § 37A:770 (rev. 2d ed. 1985). On May 12, West American received a handwritten note from Coppi that listed the amount of cash that was in the safe at $9,413. West American requested further records of the amount of loss and also requested a meeting with the accountant for the salon. However, Coppi had no other records of the amount of money that was in the safe and failed to arrange a meeting between West American and his accountant.

West American paid Coppi's claims for losses incurred in the burglary, including an amount for the safe itself, but did not pay Coppi's claim for the cash contained in the safe. Coppi thereafter brought this action, and a jury returned a verdict for

West American.

### III. ASSIGNMENTS OF ERROR

Coppi has assigned seven errors on this appeal, which we have consolidated into four assigned errors for purposes of this discussion. Coppi claims that the district court erred in (1) failing to find that the recordkeeping provision of his policy could not serve as a basis for denial of his claim under Neb. Rev. Stat. § 44-358 (Reissue 1988), (2) instructing the jury on the burden of proof with regard to the record warranty clause, (3) allowing West American's claims adjuster to testify as an expert witness, and (4) finding that Coppi did not comply with the record warranty clause.

### IV. STANDARD OF REVIEW

The issues in this case involve questions of law. This court has an obligation to reach conclusions independent from those made by the trial court on all questions of law. *Douglas Cty. Bank & Trust v. Stamper*, 244 Neb. 226, 505 N.W.2d 693 (1993); *VanDeWalle v. Albion Nat. Bank*, 243 Neb. 496, 500 N.W.2d 566 (1993).

### V. ANALYSIS

#### 1. § 44-358

Coppi claims that § 44-358 prevents West American from relying on the record warranty clause to avoid coverage. Section 44-358 states in part:

> The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability, unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding.

Coppi contends that his alleged breach of the record warranty clause did not exist at the time of or contribute to the loss, and therefore, West American is precluded from denying coverage by § 44-358. The issue of whether § 44-358 prevents an insured from relying on a record warranty clause to deny a claim is one of first impression in Nebraska. However, the Nebraska Supreme Court has held that § 44-358 does not apply

to provisions in insurance policies that require the insured to give timely notice of claim. *First Security Bank v. New Hampshire Ins. Co.*, 232 Neb. 493, 441 N.W.2d 188 (1989); *Ach v. Farmers Mut. Ins. Co.*, 191 Neb. 407, 215 N.W.2d 518 (1974); *Clark v. State Farmers Ins. Co.*, 142 Neb. 483, 7 N.W.2d 71 (1942). In *Clark*, the court stated:

> [Section 44-358] does not deny the insurer the right to rely upon the conditions of its policy which the insured is required to perform as a condition of recovery after the loss has occurred. It relates to the question of a recoverable loss and not to the question of procedure to be followed in collecting for the loss after it has occurred. Clearly a notice of loss and proofs of loss can only be given after the loss has occurred.
>
> To construe the statute as plaintiff contends would be to hold that an insurance company could not rely upon any conditions of its contract as a matter of defense unless it be able to show that a breach existed at the time of and contributed to the loss. To so hold would be to declare many standard provisions of insurance contracts inoperative.

142 Neb. at 487-88, 7 N.W.2d at 73. Accord, *First Security Bank, supra*; *Ach, supra*. In *Clark*, the court also noted that the State of Texas had enacted a statute similar to § 44-358 and that the Texas courts held that the statute refers only to policy provisions which, if breached, may contribute to or bring about a loss. Further, the court in *Clark* cited with approval *Agency of Fire Ins. Asso. v. W. F. Driggers*, 111 Tex. 392, 238 S.W. 633 (1922). In *W. F. Driggers*, the Texas Supreme Court held that the Texas statute did not invalidate a record warranty clause similar to the one in Coppi's policy. See 8 Couch, *supra*, § 37A:788. But see, 44 Am. Jur. 2d *Insurance* § 1255 (1982); 8 Couch, *supra*, § 37A:787.

The Nebraska Supreme Court's interpretation of § 44-358 in *Clark* leads us to the conclusion that the statute does not apply to the record warranty clause in this case. Like the notice-of-loss provision addressed in *Clark*, the record warranty provision is a procedural requirement that the insured must substantially comply with in order to collect for the loss, rather

than a condition that relates to the question of a recoverable loss. See *Clark, supra.* We find that the record warranty clause is one of those "standard provisions" referred to in *Clark* which the insurer should be able to rely on as a matter of defense, even though the insurer cannot show that the breach of such provision existed at the time of the loss and contributed to the loss. We find that Coppi's first assigned error is without merit.

## 2. BURDEN OF PROOF

In his second assigned error, Coppi claims that the trial court erred in instructing the jury that Coppi carried the burden of proving that he complied with the record warranty provision. Coppi asserts that the record warranty clause is a condition subsequent and that the burden of proving compliance with conditions subsequent is on the insurer. On the other hand, West American claims that the record warranty clause constitutes a condition precedent and that the burden of proving conditions precedent is on the insured.

We note that the record warranty provision in Coppi's policy is not expressly worded as a condition, much less a condition precedent. Rather, it merely states that "[t]he insured shall keep records . . . ." Further, although Coppi's policy contains three entire sections expressly devoted to "Conditions," the record warranty provision does not appear in any of those sections.

■ Authorities are split on the issue of whether a record warranty provision constitutes a condition precedent, a condition subsequent, or a warranty. However, the weight of authority has concluded that such a provision constitutes a warranty. 44 Am. Jur. 2d, *supra*, § 1252; 8 Couch, *supra*, § 37A:779. The law of this state appears to be consistent with the majority view, as the Nebraska Supreme Court, in *Connecticut Fire Ins. Co. v. Jeary*, 60 Neb. 338, 83 N.W. 78 (1900), found that a similar clause in an insurance policy constituted a promissory warranty. In *Jeary*, the insurer sought to avoid liability on a fire insurance policy, claiming that insured breached a clause that required the insured to keep records of his inventory and place such records in a fireproof safe. The court specifically stated that the clause constituted a promissory warranty.

■ It appears well established that insurer bears the burden of proving a breach of a warranty. 44 Am. Jur. 2d, *supra*, § 1933. See *Ohio Casualty Co. of Hamilton, Ohio v. Swan*, 89 F.2d 719 (8th Cir. 1937) (construing Nebraska law to require insurer to bear burden of proving breach of warranty or condition). It also appears well established that the insurer bears the burden of proving breach of a record warranty clause. See, *Jeary, supra* (quoting with approval an Iowa case that placed the burden of proving noncompliance with a similar clause on the insurer); *Seaboard Ins. Co. of Maryland v. Caver*, 207 Ark. 1038, 183 S.W.2d 922 (1944) (holding that the insurer has the burden of proving noncompliance with a record warranty clause); *Mississippi Fire Ins. Co. v. Perdue*, 217 Ala. 292, 116 So. 142 (1928) (holding that the insurer has the burden of proving noncompliance with a record warranty clause); *Zeltner v. Fidelity & Deposit Co. of Maryland*, 220 A.D. 21, 220 N.Y.S. 356 (1927) (holding that the insurer in that case had the burden of proving noncompliance with a record warranty clause). But cf. *Bruner Co. v. Fidelity & Casualty Co.*, 101 Neb. 825, 166 N.W. 242 (1917). Finally, we note that requiring insurers to prove compliance with a record warranty clause is consistent with the well-established rule of law that requires insurers to bear the burden of proof with regard to policy exclusions. See, *Thorell v. Union Ins. Co.*, 242 Neb. 57, 492 N.W.2d 879 (1992); *Robinson v. State Farm Mut. Auto. Ins. Co.*, 188 Neb. 470, 197 N.W.2d 396 (1972).

The weight of authority in this and other jurisdictions has concluded that record warranty provisions constitute warranties, not conditions precedent. Accordingly, we conclude that the record warranty clause in the policy issued to Coppi constituted a warranty. We also follow other jurisdictions in holding that the insurer has the burden of proving noncompliance with a record warranty clause. Because the trial court in this case erroneously instructed the jury that Coppi had the burden of proving compliance with the record warranty clause, we must reverse, and remand for a new trial. Since the cause must be remanded for the above reason, we will not discuss the third or fourth assigned error.

## VI. CONCLUSION

The record warranty clause in Coppi's insurance contract is enforceable by West American. However, because the district court erred in placing the burden of proving compliance with the provision on Coppi, we must reverse, and remand for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

SIEVERS, Chief Judge, dissenting.

With all due respect, I cannot join the opinion of my colleagues which finds that the trial court erred in failing to impose the burden of proof with respect to the record warranty clause on West American. The majority relies upon *Connecticut Fire Ins. Co. v. Jeary*, 60 Neb. 338, 83 N.W. 78 (1900). In that case, the policy of insurance covering a stock of merchandise which was destroyed by fire provided that the insured take inventory of the stock at least once a year, keep books of account correctly detailing the purchase and sale of such stock, and keep all inventories and books securely locked in a fireproof safe or other place secure from fire. The policy expressly provided: " 'Failure to observe the above conditions shall work a forfeiture of all claims under this policy.' " *Id.* at 339, 83 N.W. at 78.

The fire in *Jeary* occurred within less than a year of the policy's inception, so no inventory had been taken, and although books of accounts were kept, they were not preserved as required and were destroyed in the same fire which burned the stock of goods. One cannot tell from the opinion whether a jury trial was involved, but clearly the case was not decided on the basis of jury instructions. Instead, the court defines the question as what actions of the insured will work a forfeiture of the policy. The court recites that the books of account were kept as required in the warranty; however, they were not preserved, and thus, it became a matter of whether the failure to comply with this one condition would work a forfeiture of coverage. The court found that from the language of the policy, it was not the intention of the parties that the policy be forfeited "by the mere failure to comply with one only of the conditions of the warranty" and held that there must have been a failure of all of

the conditions. *Id*. at 345, 83 N.W. at 80.

I can find no holding in *Jeary* concerning who has the burden of proof. The court does quote an Iowa Supreme Court decision for the proposition that " 'the burden is upon him who claims a forfeiture to clearly show that he is entitled to it [the forfeiture].' " 60 Neb. at 346, 83 N.W. at 80. However, I do not take this as a holding of the case. Additionally, the case before us involves at its most fundamental level the question of whether the insured has the burden of proving its alleged loss, which I see differently than a forfeiture of coverage. The Nebraska Supreme Court in *Jeary* affirmed the trial court's conclusion and held that there was no ground for forfeiture, as the insured had not failed to comply with *all* of the requirements of the recordkeeping clause.

I do not read *Jeary* as authority for the majority's proposition that the trial court erred when it instructed the jury that Coppi carried the burden of proving that he had complied with the policy requirement that he " 'keep records of all of the insured property in such manner that the company can accurately determine therefrom the amount of the loss.' "

I would hold that in the factual situation before us, compliance with the policy requirement for recordkeeping is a condition precedent to Coppi's recovery, and therefore, the burden of proof to show compliance with that policy requirement is upon Coppi. I say this in light of a factual record which establishes strong support for the conclusion that Coppi handled the cash generated at The Factory Beauty Salon in Omaha, Nebraska, in such a manner as to ensure that those who might have a legitimate interest in knowing about such cash, such as West American, would be left to guesswork. For example, 2 days after the burglary, Coppi destroyed the weekly cash ledger which purportedly detailed the cash taken in by The Factory Beauty Salon for the previous week and which would detail at least part of the cash allegedly kept in the safe.

The Nebraska Supreme Court in *O'Brien v. Fricke*, 148 Neb. 369, 375, 27 N.W.2d 403, 407 (1947), defined condition precedent as " ' "a condition which must be performed before the agreement of the parties shall become a binding contract, or it may be a condition which must be fulfilled before the duty to·

perform an existing contract arises." . . .' " That definition was followed in *Schmidt v. J. C. Robinson Seed Co.*, 220 Neb. 344, 370 N.W.2d 103 (1985), which involved a suit by a grower of hybrid seed corn against the seed company because the seed company had released the grower's acres because they had become infested with "shattercane," making it allegedly impractical to perform the necessary detasseling in order to produce hybrid seed corn. On appeal, the seed company contended that the trial court had improperly placed the burden of proving a breach of the contract on the seed company. In its discussion, the Supreme Court observed that both parties agreed that the burden of proving conditions precedent in the contract was upon the grower, pursuant to Neb. Rev. Stat. § 25-836 (Reissue 1989). That statute provides: "In pleading the performance of conditions precedent in a contract, it shall be sufficient to state that the party duly performed all the conditions on his part; and if such allegation be controverted, the party pleading must establish on the trial the facts showing such performance."

In *Robinson Outdoor Advertising Co. v. Wendelin Baking Co.*, 145 Neb. 112, 15 N.W.2d 388 (1944), the court relied upon the predecessor statute to § 25-836 and held that when the pleading of the performance of a condition precedent in a contract is controverted, the party pleading the performance of such condition precedent is required to establish the facts showing such performance. In the case at hand, Coppi's amended petition, upon which the case went to trial, alleged that he had fulfilled all conditions precedent. West American denied this allegation and put Coppi upon strict proof. Thus, I conclude the burden of proof belongs on Coppi.

The requirement that Coppi keep records of the cash in such a manner that West American can accurately determine the amount of the loss from those records is, in my judgment, clearly a condition precedent. A policy of insurance which covers the cash contained within a safe is obviously a situation which lends itself to the potential for fabricated or exaggerated claims, absent appropriate business records to establish and verify the cash contents of the safe. The businessperson who is dealing in cash, such as Coppi apparently was, is the party in the

best position to establish a recordkeeping system, as well as the maintenance thereof. Such records are fundamental to believable evidence of a cash loss. To impose the burden of proving the existence of such records, kept in " 'such manner that the company can accurately determine therefrom the amount of the loss,' " upon the operator of the business that owns the cash seems quite logical.

I find it just and equitable to impose the burden of proof upon Coppi, the one in the best position to know, and to adduce evidence. Finding no error, I would affirm.