S. K. Cooper sued on a standard fire insurance policy covering his stock of goods totally destroyed while the insurance contract was in force. Defendant filed specifications of defense, one of which was that plaintiff was precluded from recovery because of failure to comply with the iron-safe clause in the policy; and to this, plaintiff replied that the agent who solicited and wrote the policy was entirely familiar with the method and manner in which plaintiff kept the records of his business, and expressly waived the iron-safe clause in the policy, and, therefore, defendant was estopped from relying thereon as a defense; and besides, that he has fully complied with the iron-safe clause. At the conclusion of plaintiff's *Page 657 
evidence, (he being the only witness), the court directed a verdict for defendant; and the case comes here on error.
Plaintiff, inexperienced in the mercantile business, purchased the stock of goods in December, 1920, the goods being inventoried by the vendor. The policy was issued on March 17, 1921, and is the standard form required by Sec. 68, Chap. 34, Code 1923; the fire occurred on the night of Sept. 12, 1921. From Cooper's testimony it appears that defendant's soliciting agent, Harmon, came to his store and after insisting upon plaintiff that he make the contract, was finally told by plaintiff that, "if you will take it out the way things are here, the way I am running the business and insure it I will accept the insurance." A set of books was not pretended to be kept. He used the McCaskey System which showed the credit sales to the customers. The cash sales were kept by a McCaskey cash register; and when a customer paid money on account, the cash was placed in the cash register and a corresponding credit made on the customer's account kept by the McCaskey System. The money was taken out of the cash register every day or so and deposited in the bank and entered on plaintiff's bank book. The invoices of purchases were kept on file. There was an iron safe in the store. The agent, being fully aware of the method of keeping a record of plaintiff's business as above set out, and saying that there was no better system than the McCaskey System, and that "you could not get around it," wrote the policy and was paid the premium. He said that the agent, after looking over the method of keeping a record of the business, said that was all that was necessary to show the business transactions and complied with the terms of the policy, and that it complied with the iron-safe clause. The court would not permit the evidence of the witness, to the effect that the agent had thus waived the iron-safe clause, to go to the jury; holding that a promissory warranty clause in a standard policy could not be waived by a soliciting agent. It appears further from his evidence, that the only original record of the business which was not destroyed by the fire, was the credit sales shown by the McCaskey System which system was in the iron safe, and the inventory of the original stock made at the time of purchase which was then in possession *Page 658 
of the vendor, Ray Teter, and at his (Teter's) dwelling house. The evidences of the cash sales and purchases of goods were burned. To supply the cash sales record plaintiff introduced the items and total of his deposits in the bank made by an adding machine at the bank, and which plaintiff says he saw an employee of the bank make out; and to prove the purchases from wholesale houses during the time the business was conducted, duplicate invoices were filed, which plaintiff says were correct duplicates of the originals. Neither the bank official who furnished and added up the cash deposits, nor any person who made the duplicate invoices, were offered as witnesses. Exception was made to these items as not constituting the best evidence.
The correctness of action of the trial court in directing a verdict for defendant depends upon whether defendant is estopped from relying upon the iron-safe clause, and if not; whether plaintiff has shown a compliance with this promissory warranty.
The purpose of the iron-safe clause as to making inventories, keeping the books "which shall clearly and plainly present a complete record of the business transacted including all purchases, sales and shipments, both for cash and credit from the date of the inventory", and that such inventories and records shall be preserved in an iron safe at all times when the store is not open for business, or in a place not exposed to a fire which might destroy the building and goods, is to preserve a record which will facilitate ascertainment of loss in case of fire, and enable the insurer to arrive more accurately at the exact amount of the loss. It is to furnish to him the best means and a reliable source for ascertaining the amount of his liability. It provides the best method by which the respective rights of the parties may be adjusted; and it is designed to protect the insurer against misrepresentation, deceit and fraud. Liverpool Ins. Co. v. Kearney,180 U.S. 132, 45 L.Ed. 460; Scottish Union Ins. Co. v. VirginiaShirt Co., 113 Va. 353, 41 Ins. Law Journal 948. It is quite generally held that such provision, designed for these objects and purposes is reasonable, valid and enforceable. Maupin v.Ins. Co., 53 W. Va. 557. The evidence does not show a full waiver *Page 659 
of this part of the policy on the part of defendant, more especially that part which requires the records of the business to be preserved and produced. Indeed, there could be no waiver by the soliciting agent, because the policy says that no agent has authority to waive the conditions therein. Maupin v. Ins.Co., supra. The limitation on the power of the agent is notice to the assured that the agent cannot waive promissory warranties, and constitutes an agreement between the parties that the agent has not, nor shall have any such power. Medley
v. Ins. Co., 55 W. Va. 342. If a clause in an insurance policy be to any extent ambiguous, and the agent represents that the insurance company construes the clause to have a meaning not inconsistent with the language used, and the insured takes the policy relying upon that construction and interpretation, and a loss occurs, the insurance company will be estopped from giving the ambiguous clause a different meaning from that given by the agent and on which the insured relied. Edwards v. MutualAssociation, 86 W. Va. 339. But there is nothing ambiguous nor uncertain in the language used in the iron-safe clause of the policy. The most that can be said is that the agent told the insured that his method of keeping a record of his business was one that substantially complied with the requirement that he should keep a set of books clearly and explicitly showing a complete record of the business; not that the promissory warranty was waived. There is no suggestion or inference that the agent told the assured that he could, under the policy, keep the records of the business elsewhere than in a fire proof safe, or in some other safe place, when the store was not open for business. There seems to have been no attempt to waive the safe keeping of the records; it only went to the method of making the records. Failure to preserve the records as required would prevent recovery. No part was preserved except the credit sales which were in the safe, and the inventory which happened to be at Teter's dwelling. One of the main objects of the warranty was thus defeated. What would be the benefit of records of the business, if kept, and then destroyed? Had the records been put in the safe or removed to a place of safety outside of the building, and then when the contract *Page 660 
was thus complied with, it was impossible for the insured to produce them because of some eventuality over which he had no control, a different rule might prevail; and secondary evidence could then be admitted to show their contents. The reason for preserving the records when kept is accentuated in the case at bar, for the evidence of the amount of the loss, fixing the liability, was not clear and satisfactory. It consisted of an inventory taken ten months before the fire, invoices of purchases made since that time claimed to be copies of original invoices, supported by defendant's testimony alone that they were true copies, debit slips from the McCaskey Register System, and figures compiled on an adding machine purporting to give the items and amount of cash deposited in a bank during the period the business was conducted. It is incumbent upon plaintiff to show his loss by reasonably satisfactory evidence. 26 C. J. page 519. The parties contracted that the assured would follow a method by which evidence of loss would be primary and reasonably clear, and free from misrepresentation, mistake, fraud and deceit. Failure to preserve the records as required by a promissory warranty generally precludes recovery.Mitchell v. Potomac Ins. Co., 183 U.S. 42, 46 L.Ed. 74; PelicanIns. Co. v. Wilkerson, 53 Ark. 353; German Am. Ins. Co. v.Fuller, 26 Okla. 722; Goldman v. North British Ins. Co., 48 La. Ann. 223; 19 So. 132; Hammond v. Niagara Fire Ins. Co.,92 Kan. 851, L.R.A. 1915 F. 759; King v. Concordia Fire Ins.Co., 140 Mich. 258. While, as before noted, the assured could not be responsible where his records are lost by pure accident after he has used due diligence in placing them in a place of safety, it is generally held that if through the negligence of himself or employees, his books and records required to be kept, are not placed in a safe or a place of safety as agreed, and are in consequence of such failure destroyed, he is responsible. Cooley's Briefs on the Law of Insurance, Vol. 2, page 1829, and cases cited. Defendant having specified a failure of plaintiff to comply with the iron-safe clause warranty as defeating recovery under Sec. 64, Chap. 125, Code 1923, the burden of proof was on plaintiff to show a compliance with the clause. Adkins v. Ins Co., 45 W. Va. 384;Rosenthall v. Scottish Ins. Co., 55 W. Va. 238. *Page 661 
Having failed to show a substantial compliance, in that material parts of the records required to be kept in a fire proof safe at night or in some place not exposed to a fire which would destroy the building in which the goods were kept, the burden of proof was not discharged by plaintiff, and there was no error in giving the peremptory instruction to find for defendant.
The other assignments of error relating to the admissibility of the copies of invoices, the items and total of the cash deposits in bank, and the evidence that the soliciting agent told plaintiff that the McCaskey System then being used by plaintiff was all that was necessary to comply with the terms of the policy, are unnecessary to be considered. The fact that the records were not preserved and not even attempted to be preserved as required, and no waiver or attempted waiver of this requirement was shown, sustains the action of the lower court.
Affirmed.