CALLOYAN v. AMERICAN CASUALTY CO. OF READING, PA.

No. 470.

Municipal Court of Appeals for the District of Columbia.

March 5, 1947.

Henry F. Lerch and Wilton H. Wallace, both of Washington, D. C., for appellant.

Richard W. Galiher, of Washington, D. C. (Green & Herbert, of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

■ This is an appeal from a judgment denying recovery on a burglary and robbery insurance policy. The policy, covering plaintiff's jewelry store, provided protection against "interior robbery" to the extent of $1,500 and against "open stock burglary" to the extent of $3,000. Plaintiff testified that while he was alone in the store two ostensible customers entered and, after examining a ring, at the point of a gun took from him the ring, valued at $17, and $3,000 in cash. It is clear from a reading of the pol-

icy that the loss was not covered by the "open stock burglary" clause but came within the provision of the "interior robbery" clause, and any recovery must be limited to $1,500.

The insurance company, without admitting the robbery, rested its defense on a provision of the policy, the material part of which reads: "The Company shall make no payment unless the amount of loss can be accurately determined by the Company from the insured's records." The issue developed at the trial and presented here is whether the insured's records were such that the loss could be determined from them.

The insured's business was sale of jewelry and repair of watches. He had no employees and his gross income was about $12,000 a year. His records of cash receipts consisted of two books, one showing daily sales and the other showing watch repairs. His only record of disbursements consisted of receipts and invoices. He did no credit business and paid all bills in cash or by money order. He kept no inventory and, at least as far as the record shows, never prepared a profit and loss statement or a general statement of assets and liabilities. He had no bank account and kept his cash in a cigar box in a safe in the store. It was from this box that the robbers took the cash. Plaintiff testified that in the box was $2,000 cash which he had accumulated in his business and $1,000 cash which he had borrowed from a friend about four weeks prior to the robbery. No records were kept indicating the amount of cash in the safe and the insured had no record of the $1,000 loan. The lender testified he made the loan in cash and received a receipt from the insured but the receipt had been misplaced at the time of the trial.

■ The authorities are generally in accord that a provision such as the one in question is valid and reasonable, its purpose being that the insurer may determine an alleged loss accurately and fairly and save itself from payment of fraudulent or exaggerated claims; that such provision is to be interpreted liberally in favor of the policy-holder and a substantial compliance is all that is required; that no particular form of records or bookkeeping is required;

and that any records, however informal or crude, are sufficient, provided that from such records the loss may be determined with reasonable certainty. Absolute accuracy is not required. But such records are not sufficient if from them the loss cannot be determined without resorting to extraneous sources, especially the oral testimony of an interested party. For cases on the subject, see 5 Appleman, Insurance Law and Practice, § 3024 et seq.; 45 C.J.S., Insurance § 658; 29 Amer. Jur., Insurance, Section 722; Annotations 39 A.L.R. 1443, 62 A.L.R. 630, 125 A.L.R. 350.

The insured does not question the above stated principles of law. Indeed, he agrees with them, stating that the important thing is that the records permit the amount of loss to be accurately determined. And he says that taking the period from January 1, 1946, to April 27, 1946, (the date of the robbery) the cash sales book and watch repair book reflect all cash received and the invoices and receipts reflect every disbursement in the normal business operation, and that deducting the total disbursements from total receipts leaves the amount of calculated cash on hand. At trial the insured produced a statement prepared by an accountant along the foregoing lines, and the insured argues that this statement starting with a zero cash balance as of January 1, 1946, demonstrates that on the day of the robbery there was on hand a cash balance of $2,957.22, or at least a sum far in excess of $1,500. The fault in the statement, and the fallacy in the argument, is that the insured was admittedly withdrawing from the cash for living expenses and personal expenditures, and no record of such withdrawals was kept. The accountant's statement, under cash disbursements, carries this item: "Living expenses (16½ weeks at $40.00 per week as estimated by Mr. Calloyan)—$660.00." It is true that insured testified he withdrew for personal use only $40 per week, but there is not an iota of evidence in his records to support this testimony. If there are admitted disbursements of cash of which no record is kept, it is impossible for an accountant or anyone else to determine from the records alone the amount of cash that was, or should have been, on hand on the day of the robbery.

Furthermore, the accountant's statement of cash receipts contains an item of $1,000, representing the alleged loan, but there was nothing in the records of the insured relating to that loan. The lender testified that he had a receipt for the loan, but the lender's receipt was no part of the insured's records.

■■ It appears plain to us that the insured's records were not sufficient to enable the loss to be determined therefrom with any degree of reasonable certainty. Moreover, the question of whether the insured's records constitute a substantial compliance with the policy provision is generally one for the trier of the facts,[1] and the trial judge, who heard the case without a jury, has determined that question adversely to the insured. As we have indicated, there was more than substantial evidence to support that finding. The finding is broad enough to cover not only the cash loss but also the loss of the ring.

■ The insured complains that the trial court was in error in not reopening the case after appeal had been noted to permit insured to offer in evidence the loan receipt which could not be located at time of trial but was thereafter found. Since the receipt was not part of insured's records, we see no error in the court's action. At the best, the receipt was only slightly corroborative of the insured's oral testimony that the proceeds of the loan were in the cash box at the time of the robbery.

Affirmed.

[1] National Surety Co. v. Earl Park State Bank, 7 Cir., 63 F.2d 825; Bank of Union v. Fidelity & Casualty Co. of New York, 8 Cir., 62 F.2d 1040; Aetna Casualty & Surety Co. v. Reliable Auto Tire Co., 8 Cir., 58 F.2d 100; Lumbermen's Mut. Ins. Co. v. Johnson Lumber Co., 5 Cir., 53 F.2d 940.