SAM JOSEPH SCIARA d/b/a SAM'S ITALIAN VILLA, Appellant, v. THE FIDELITY & CASUALTY COMPANY OF NEW YORK, INC. Appellee.—362 S. W. (2d) 935.

Western Section, Jackson.   August 31, 1961.

Certiorari Denied by Supreme Court December 8, 1961.

Irving M. Strauch, Strauch & Jones, Memphis, for appellant.

Buchignani & Greener, Memphis, for appellee.

CARNEY, J. Complainant below, Sam Joseph Sciara, was the owner and operator of a restaurant in downtown Memphis known as Sam's Italian Villa. On the night of November 17, 1959, his place was burglarized.

Some $4,000 in cash in the safe was not taken. Complainant testified that he lost approximately $4,000 in cash which was contained in two paper sacks, one sack within a larger sack, which he had hidden under a stairway near the safe. Complainant testified that the reason he had hidden the money in the paper sacks was that he had already had three burglaries or thefts during the year 1959. He sought recovery of $2,359.46 of the $4,000 loss under the terms of a "Comprehensive Dishonesty, Disappearance and Destruction Policy."

The two provisions of the policy pertinent to this litigation are:

610

## "INSURING AGREEMENTS

\* \* \* \* \* \*

## "LOSS INSIDE THE PREMISES COVERAGE

"II. Loss of Money and Securities by the actual destruction, disappearance or wrongful abstraction thereof within the Premises or within any Banking Premises or similar recognized places of safe deposit.

"Loss of other property by Safe Burglary or Robbery within the Premises or attempt thereat, and loss of a locked cash drawer, cash box or cash register by felonious entry into such container within the Premises or attempt thereat or by felonious abstraction of such container from within the Premises, and damage to the Premises by such Safe Burglary, Robbery or felonious abstraction, or by or following burglarious entry into the Premises or attempt thereat, provided with respect to damage to the Premises the Insured is the owner thereof or is liable for such damage.

\* \* \* \* \* \*

## "THE FOREGOING INSURING AGREEMENTS AND GENERAL AGREEMENTS ARE SUBJECT TO THE FOLLOWING CONDITIONS AND LIMITATIONS:

\* \* \* \* \* \*

## "BOOKS AND RECORDS

"Section 6. The Insured shall keep records of all the insured property in such manner that the Com-

pany can accurately determine therefrom the amount of loss.''

The Chancellor found that the complainant had not adequately proven his loss by books and records as provided in the policy. Complainant has appealed to this court and assigned error.

The record shows that for some twenty years the complainant had carried insurance through his local agent, Mr. Streuli, and had never had a loss until 1959 when he had four burglaries. The first two burglaries were covered by policies issued by another company; a burglary on August 28, 1959, was covered by a policy issued by defendant below, Fidelity & Casualty of New York.

The defendant paid the loss of August 28, 1959, in the amount of $1,227.18. The company refused to pay complainant's claim under the November 17 burglary on the grounds that the complainant had no records to support his statement as to the amount of his loss. The complainant contends, (1) that he substantially complied with the policy by keeping a record of the amount of money in the sacks on an adding machine tape which was placed in the two sacks and was stolen along with the money and (2) that the company waived the policy requirement concerning records.

Immediately after discovering the burglary the complainant told the police that he lost between $1,200 and $1,500 in the two sacks. On the same day he gave a written statement to an agent of the defendant insurance company to the effect that he had lost $1,780 in cash in the two paper sacks and that the money had been accumulated over a period of time by withdrawals from his daily receipts.

At the trial the complainant testified that in the small paper sack he had the sum of $2,359.46 in cash which represented the proceeds of three insurance checks which he had received from the former burglaries—two of these were in March, 1959, and the other was received in September, 1959.

Mr. Sciara further testified that the small sack was within a larger sack and the larger sack contained also $1,700 or $1,800 which he had accumulated from his daily receipts. Mr. Sciara testified that the reason he never told the police or the agent of the company about the $2,359.46 on any occasion prior to the trial was that he had simply forgotten about it. Complainant was able to produce records of the three checks which he had cashed previously totalling $2,359.46. However, he had no records at all to show that he had any amount of money in the paper sacks.

In our opinion the provision in the present policy is similar to the bookkeeping provisions of the iron safe clauses of fire insurance policies. Our Tennessee Supreme Court in the case of Hughes v. Aetna Insurance Company, 1923, 148 Tenn. 293, 255 S. W. 363, held that the iron safe clause was fair and reasonable and necessary to protect the insuror against the fallibility or dishonesty of the insured; that expert bookkeeping was not required but such books should be kept as would show fairly to a man of ordinary intelligence that amount of the loss. See also Mabry v. Hartford Insurance Co. (1941), 26 Tenn. App. 463, 173 S. W. (2d) 169.

We agree with the Chancellor that we do not find in the present case that Mr. Sciara has testified falsely. The fact that on the morning the burglary was discovered

he forgot about $2,300 in the two paper sacks and remembered only the $1,700 certainly shows him to have a faulty memory at the very least. Such faulty memory, we think, demonstrates the reasonableness of Section 6 in the policy requiring the complainant to keep records of the property covered under the policy. Therefore, assignment of error No. I is respectfully overruled.

■ Complainant also contends that the company waived the requirement of records by paying him for his loss sustained in August, 1959, and thus became familiar with the type records which he kept in his business. In the August, 1959, burglary the cash register was broken into and on the very next day Mr. Sciara gave the agent for the insurance company a detailed statement of the exact amount of money that was in the cash register and substantiated his statement by producing a day book showing daily receipts and expenditures which fully supported his contention that he lost $998.37 from the cash register. A similar record could well have supported complainant's testimony in the present case but he produced no records.

We do not find any merit in complainant's contention that Mr. Streuli, the insurance agent, told the complainant that he did not have to keep records. The agent denies such statement.

■ Likewise, we find no merit in complainant's insistence that the company waived its defense of no records by asking for a proof of loss after learning that the complainant did not have any records. The company does not claim a forfeiture of the policy and has at all times stated that it was willing to pay if the complainant could

produce a record from which it could accurately determine the amount of his loss.

The defendant company made some payment to the complainant for the amount necessary to fix the door of his building damaged by the burglars and also offered the complainant a $250.00 settlement which it called a nuisance value. We fail to see how either of these acts on the part of the company constituted an admission of liability or waiver of provision of the policy requiring the complainant to keep adequate records.

In our opinion the Chancellor was correct, the assignments of error are respectfully overruled and the judgment of the lower court affirmed at the cost of the complainant.

Avery, P. J. (W. S.), and Bejach, J., concur.