ABNER RUBIN, APPELLEE, V. PIONEER FEDERAL
SAVINGS & LOAN ASSOCIATION, A CORPORATION,
APPELLANT.

334 N.W.2d 424

Filed May 20, 1983. No. 82-040.

Robert A. Green of Morsman, Fike, Davis & Schleich, P.C., for appellant.

Ephraim L. Marks and James M. Woodruff of Marks, Clare, Hopkins, Rauth & Cuddigan, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, and HASTINGS, JJ., and COLWELL, D.J., Retired.

PER CURIAM.

The appellant, Pioneer Federal Savings & Loan Association (Pioneer), appeals from a jury verdict in the amount of $45,025.71 entered in favor of the appellee, Abner Rubin, and against Pioneer. The action was originally commenced by Rubin in the District Court for Douglas County, Nebraska, against Pioneer, seeking to recover damages allegedly sustained by Rubin as a result of Pioneer's breach of a contract to lend Rubin money.

The evidence discloses that Rubin and the managing officer and executive vice president and treasurer of Pioneer began negotiating the terms of a

takeout loan in February or March of 1980. After obtaining authorization from Pioneer's board, a commitment letter was prepared. The letter committed Pioneer to loan Rubin $400,000. The loan was to be secured by a first mortgage on an apartment complex to be constructed by Rubin. The commitment was subject to certain conditions, including that the complex, when constructed, would have an appraised value of at least $850,000. Pioneer committed to an interest rate of 14.50 percent, but provided that the rate was to be valid only for a 6-month period beginning March 3, 1980, and ending September 3, 1980. A further provision of the commitment was that the specific improvements, consisting of 40 units, must be substantially completed prior to executing the permanent mortgage. The letter defines "substantially completed" to be 90 percent or more. Specifically, the letter provided in part: "The percentage of completion shall be designated after inspection by Association personnel and the percentage of completion shall be determined by Association personnel at the time it is called for." The letter further provided that the interest rate of 14.50 percent was dependent upon the improvements being 90-percent or more completed within the 6-month time frame. In the event that that condition was not met, then the interest rate was to be adjusted in accordance with a formula contained in the letter. On March 5, 1980, Rubin paid to Pioneer a $4,000 commitment fee and proceeded with the construction of the apartment complex. His next reported contact with Pioneer occurred in the latter part of August 1980, when he had a conversation with Pioneer's secretary. The evidence is in conflict as to exactly what was discussed at that time. According to Rubin, he informed the secretary that the project was 90-percent completed and offered to drive her or someone else from Pioneer to Omaha for an inspection on September 3, 1980. He testified that she called him back a few days later and of-

fered to waive inspection and "take his word for it." They then discussed closing the loan after the first of the year. However, the secretary testified that only the closing date was discussed at that time and that she "didn't remember" discussing the inspection.

Sometime in early December of 1980 Rubin hired a licensed real estate appraiser to inspect the property. As a result of the inspection, Rubin obtained a written appraisal of the property, in the amount of $1.4 million. Rubin forwarded this appraisal to Pioneer. Shortly thereafter, Rubin had an attorney draft a letter to Pioneer, advising that he was ready to close the loan and requesting Pioneer to furnish the necessary documents and schedule the closing date within 10 days. Rubin received no response from Pioneer until February of 1981. In a letter dated February 7, 1981, Pioneer informed Rubin that the loan was ready to close and that, in accordance with the commitment letter, the interest rate would not be 14.50 percent but, rather, 2 percent above the 10-year fixed-rate advance rate from the federal home loan bank. Based on the current quote, Pioneer predicted the rate to be 15.625 percent. In response to that letter Rubin filed suit.

In his petition Rubin alleged that he had a valid and binding commitment from Pioneer; that he had performed and fulfilled all of the conditions required of him to be performed pursuant to the commitment letter, and he was therefore entitled to the loan in accordance with the commitment letter at an interest rate of 14.50 percent; that Pioneer refused to perform the agreement after formal demand was made; and that, by reason of Pioneer's breach, Rubin was compelled to seek other financing "at a substantially higher cost than that provided by the commitment." Rubin prayed for general damages and the return of $4,000, representing his commitment fee, plus interest and costs.

At trial both parties introduced considerable evidence on the question of whether the project was

substantially completed by September 3, 1980. Over Pioneer's objection, the court instructed the jury that Pioneer had failed to inspect the complex prior to that date and thus voluntarily waived its right to make such inspection.

The trial court instructed the jury, in instruction No. 6, in part as follows: "The burden is on the defendant to prove by a preponderance of the evidence that the 40-apartment complex was less than 90% complete on September 3, 1980. If the defendant has proved the foregoing proposition by a preponderance of the evidence, your verdict will be for the defendant."

The court further instructed the jury, in instruction No. 14, in part as follows: "The measure of damages in such event would be the difference between that amount which the plaintiff would be required to pay at 14.5% interest on a $400,000.00 loan for the duration of the loan and what he would be required to repay at an interest rate of 15.625% over the duration of the loan."

And, finally, the court instructed the jury, in instruction No. 15, in part as follows: "The sum of $4,000.00 must be added to the present cash value of the plaintiff's damages." Apparently, it was the court's view that if the jury found for the plaintiff in any amount, it was required to award the commitment fee to the plaintiff, in addition to his damages.

Pioneer has assigned three errors. They are: (1) The trial court erred in instructing the jury that Pioneer had the burden of proving that the complex was less than 90-percent complete on September 3, 1980, and Rubin's noncompliance with that condition of the agreement. (2) The trial court erred in not instructing the jury on the proper measure of damages. (3) The evidence was insufficient to support the verdict.

We shall take up the errors in the order in which they have been assigned. Pioneer's contention that the trial court erred in instructing the jury that

Pioneer had the burden of proving that the complex was *less* than 90-percent complete on September 3, 1980, is correct. Under the terms of the commitment, Pioneer agreed to loan Rubin $400,000 at an interest rate to be determined when the project was substantially completed. Substantially completed was to mean more than 90-percent completed. If this event occurred within the specified 6-month period ending on September 3, 1980, the loan would be made at 14.50 percent. If the project had not reached that stage of completion by that date, the interest rate would then be adjusted upward in accordance with a formula set out in the letter.

Further, Rubin, in his petition, alleged that he had performed all of the conditions required by him to be performed. Pioneer, in its answer, denied that fact, thereby putting the question of full performance in issue. Neb. Rev. Stat. § 25-836 (Reissue 1979) provides: "In pleading the performance of conditions precedent in a contract, it shall be sufficient to state that the party duly performed all the conditions on his part; *and if such allegation be controverted, the party pleading must establish on the trial the facts showing such performance.*" (Emphasis supplied.) In this case Rubin was the party pleading the performance of conditions precedent and, under the clear language of the statute, had the burden of establishing those facts. In *Robinson Outdoor Advertising Co. v. Wendelin Baking Co.*, 145 Neb. 112, 118, 15 N.W.2d 388, 391 (1944), this court said: "In *Bingaman v. Securities Investment Corporation*, 129 Neb. 788, 262 N.W. 859, this court adopted the following general rule: 'The general rule is that the burden rests on the plaintiff to show the fulfilment of a condition precedent to his right of recovery.' Also by statute (Comp. St. 1929, sec. 20-836) where the pleading of performance of a condition precedent in a contract is controverted the party pleading the performance of such condition precedent is required to establish on the trial the facts showing such per-

formance. See *Davidson v. First American Ins. Co.*, 129 Neb. 184, 261 N.W. 144.'' The most that can be said that Pioneer waived by its earlier action was its right to inspect the project. Waiving its right to inspect the project, however, did not thereby waive a condition of the loan, to wit, that the project in fact be at least 90-percent completed by September 3, 1980. The trial court was in error in placing the burden of proving nonperformance of that condition on Pioneer.

In view of the fact that the case must be remanded for a new trial, we believe we should further comment on Pioneer's second assignment of error. In this respect the trial court erroneously instructed the jury in two aspects. In effect, the trial court instructed the jury that if it found that Rubin had sustained damages and returned damages for Rubin, it should, in addition to that, return to him his commitment fee. That was error. Apparently, Rubin's theory was that he received no value for the commitment, and therefore he should recover his commitment fee as well as his damages. This is not, however, a correct position. Had Rubin elected to rescind the contract by reason of Pioneer's breach, then Rubin would have been entitled to receive back his commitment fee. However, in this case Rubin elected to affirm the contract and seek to collect damages. He cannot, on the one hand, rescind the contract and recover his commitment fee and, on the other hand, affirm the contract and seek to recover damages for its breach. We noted in *Chesnut v. Master Laboratories*, 148 Neb. 378, 386, 27 N.W.2d 541, 547 (1947): '' 'One who brings suit upon a contract necessarily asserts that it is valid and enforceable, else he could not derive a cause of action from it. Hence if one is aware of facts which would justify him in rescinding a contract or other transaction into which he has entered, but nevertheless institutes an action upon it, this is an election to affirm it and a waiver of any right of rescission, and the

election so made is final.' " And in *Wegner v. West*, 169 Neb. 546, 100 N.W.2d 542 (1960), we said: "Rescission by its nature implies the extinction of the contract which leaves the parties without a right of recovery on the contract itself." (Syllabus of the court.) See, also, *Anson v. Grace*, 174 Neb. 258, 117 N.W.2d 529 (1962). The trial court should not have submitted to the jury an instruction directing it to return to Rubin the commitment fee in addition to damages.

Likewise, we believe that the portion of the court's instruction No. 14 which we have previously quoted was in error. In effect, the trial court advised the jury that the measure of damages was the difference between 14.5-percent interest on a $400,000 loan and 15.625 percent. The correct measure of damages is as set out in *Shurtleff v. Occidental B. & L. Ass'n.*, 105 Neb. 557, 561, 181 N.W. 374, 375 (1921), where we said: "The measure of damages for a branch [sic] of a contract to lend money is usually . . . the difference between the contract interest rate and the increased interest rate the borrower is obligated to pay in procuring a new loan. There are certain exceptions to this rule, one of which is that, where it appears that the specific purpose for which the loan was made was communicated to the lender at the time the contract was entered into, and where it further appears that the borrower has suffered special damages by the breach, which are pleaded and proved, the damages recoverable are such as may fairly and reasonably be supposed to have been in the contemplation of the parties at the time of making the contract, as the probable result of a breach of it."

Other courts faced with this issue have held that the proper measure of general damages is the additional cost of the substitute loan. See, *Consolidated American Life Ins. Co. v. Covington*, 297 So. 2d 894 (Miss. 1974); *Financial Fed. S. & L. Ass'n v. Continental Ent.*, 338 So. 2d 907 (Fla. App. 1976); *Pipkin*

*v. Thomas & Hill, Inc.,* 298 N.C. 278, 258 S.E.2d 778 (1979); *Bixler v. First Nat. Bank of Oregon,* 49 Or. App. 195, 619 P.2d 895 (1980). It may very well have been that the offer by Pioneer to Rubin of a loan with an interest rate of 15.625 percent was evidence of what Rubin would have had to pay for another loan. But it was, at best, only evidence, and it was for the jury to make that determination. The trial court's instruction in effect directed a verdict for Rubin, at least as to the amount, if the jury determined to find for Rubin in any amount. This was not consistent with even Rubin's petition, wherein he simply alleged that he was required to seek other financing at "a substantially higher cost." It was incumbent upon Rubin to prove his damages and then for the jury to make its determination based upon the evidence presented and the general law, and not upon a specific amount given to it by the court.

For these reasons we believe the verdict of the jury and the judgment of the court rendered thereon must be reversed and the case remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

McCOWN and WHITE, JJ., concur in the result.

CAPORALE, J., not participating.