THOMAS L. COPPI, DOING BUSINESS AS THE FACTORY BEAUTY
SALON, APPELLANT, V. WEST AMERICAN INSURANCE CO., AN
INSURANCE CORPORATION, APPELLEE.

524 N.W.2d 804

Filed December 9, 1994.   No. S-92-704.

2

Jeffrey A. Silver for appellant.

Robert V. Roach and Matthew J. Buckley, of Hansen, Engles & Locher, P.C., for appellee.

HASTINGS, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.

CAPORALE, J.

## I. STATEMENT OF CASE

Pursuant to verdict, the district court dismissed the action brought by plaintiff–appellant, Thomas L. Coppi, doing business as The Factory Beauty Salon, against the defendant–appellee, West American Insurance Co., under a policy of insurance whereunder West American undertook to cover, to a maximum of $10,000, losses Coppi sustained as the result of the theft of money used in the conduct of his business,

provided that Coppi maintained appropriate records from which the loss could be determined. Coppi appealed to the Nebraska Court of Appeals, asserting, in summary, that the district court erred in (1) ruling that a statute dealing with insurance warranties had no application, (2) allocating the recordkeeping burden of proof to him, (3) permitting a witness to testify as an expert, and (4) failing to determine as a matter of law that he had complied with the policy requirements. Reasoning that the district court had misallocated the burden of proof, the Court of Appeals reversed the judgment of the district court and remanded the cause for a new trial. *Coppi v. West Am. Ins. Co.*, 2 Neb. App. 834, 516 N.W.2d 264 (1994). West American successfully petitioned this court for further review. We now reverse the judgment of the Court of Appeals and remand the cause to that court with the direction that it reinstate the judgment of the district court.

## II. FACTS

Coppi's operation consisted of a number of independent contractor stylists. Typically, after a stylist performed a service, the stylist prepared a ticket which reflected the stylist's name and the amount of the service performed. The customer would then pay by either cash or check. Thereafter, the ticket was placed in a "pigeon hole" so the stylist could be given appropriate credit. At the end of the day, the salon manager would record the total value of services rendered by each stylist on a sheet of paper and place the tickets and the total sheet in the floor safe located on the premises. Each morning, the salon manager would take the tickets out of the safe and enter the totals in a weekly ledger which reflected the amount of the ticket totals for each stylist and the amount of cash and checks received.

Coppi also kept a cash reserve of between $1,000 and $1,500, from which change was made for customers. He maintained no written record of the reserve, but kept it in the safe, along with the cash received during the day, the tickets, and the total sheet. Checks were deposited in one of two banks.

The weekly ledger was kept in the back room of the salon. Stylists could dispute any discrepancy through the day

following the salon manager's recording of the day's tickets in the ledger. Each Tuesday, the stylists received disbursements in cash according to the tickets recorded in the weekly ledger. The ledger was then discarded, and no other written record of the cash taken in for any particular week was maintained.

On Sunday, March 16, 1986, Coppi's business was burglarized and the floor safe stolen, along with its contents and other items. Although the weekly ledger was not stolen, it was discarded following payment of the stylists on Tuesday, March 18. The only matter at issue is the cash loss, the parties having come to agreement on the other items.

Coppi testified that he knew the amount of cash taken in for the previous Tuesday through Friday from the weekly ledger and determined the amount of cash taken in on the day prior to the burglary by reconstructing, "[a]s best we could," the business from the stylists' records. In addition, at West American's request, Coppi supplied it with bank statements, deposit slips, and weekly ledgers for 4 or 5 weeks following the burglary.

Coppi submitted a "Property Loss Notice" form to his insurance agent. However, he did not enter the amount of loss on the form because he did not feel comfortable letting anyone know "that kind of money existed, even when the police asked." Ultimately, he claimed a cash loss in excess of $10,000.

Coppi testified that the records he maintained were those customarily kept by beauty salons in his area. But, over Coppi's objection, West American's claim adjuster, who had 19 years' experience, including work as an independent adjuster, and who had handled "hundreds" of cash burglary losses, testified that the loss form Coppi submitted would not be an acceptable document for any insurance company he had represented.

Again over Coppi's objection, the district court instructed the jury that it was Coppi's burden to prove that he had kept the records specified in the policy.

### III. SCOPE OF REVIEW

The issues submitted for review present questions of law, in connection with which we have an obligation to reach an independent conclusion irrespective of the determination made

by any inferior court. *Rains v. Becton, Dickinson & Co.*, 246 Neb. 746, 523 N.W.2d 506 (1994).

## IV. ANALYSIS

With the foregoing matters in mind, we direct our attention to each of the assignments of error in turn.

### 1. WARRANTY STATUTE

The first assignment of error complains that the district court failed to rule that Neb. Rev. Stat. § 44–358 (Reissue 1993) prevented West American from denying coverage on the ground that Coppi had failed to keep records.

The statute reads:

> No oral or written misrepresentation or warranty made in the negotiation for a contract or policy of insurance by the insured, or in his behalf, shall be deemed material or defeat or avoid the policy, or prevent its attaching, unless such misrepresentation or warranty deceived the company to its injury. The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability, unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding.

In analyzing whether the statute applies, it is important to understand the nature of the recordkeeping requirement of the policy.

Provisions requiring the keeping of inventories, books, and records of the insured business and providing a place of safekeeping for such documents are commonly referred to as "iron-safe clauses" or "record warranties." 5 John Alan Appleman & Jean Appleman, Insurance Law and Practice § 3021 (1970); 8 George J. Couch, Cyclopedia of Insurance Law § 37A:770 (rev. 2d ed. 1985). Insurers commonly require insured to keep books so the value of the loss is ascertainable. See *Hamann v. Nebraska Underwriters Ins. Co.*, 82 Neb. 429, 118 N.W. 65 (1908). Courts from all jurisdictions have found such provisions reasonable and enforceable. *Michigan Millers Mutual Insurance Co. v. Lindsey*, 285 So. 2d 908 (Miss. 1973) (lists cases finding such provisions reasonable and enforceable);

*Calloyan v. American Casualty Co. of Reading, Pa.*, 51 A.2d 678 (D.C. 1947); *Connecticut Fire Ins. Co. v. Jeary*, 60 Neb. 338, 83 N.W. 78 (1900); *Sciara v. Fidelity & Casualty Co. of New York, Inc.*, 50 Tenn. App. 608, 362 S.W.2d 935 (1961).

The weight of authority regards such a provision as a promissory warranty by the insured. 8 Couch, *supra*, § 37A:779; 5 Appleman, *supra*, § 3024; *Davis v. National Fire Ins. Co.*, 169 La. 63, 124 So. 147 (1929); *Dozark v. Westchester Fire Ins. Co.*, 50 S.D. 285, 209 N.W. 652 (1926); *Thompson v. State Assur. Co.*, 160 La. 683, 107 So. 489 (1926); *Cooper v. Ins. Co.*, 98 W. Va. 655, 127 S.E. 511 (1925); *Springfield Fire & Marine Ins. Co. v. Griffin*, 64 Okla. 131, 166 P. 431 (1917); *Cohen vs. Home Insurance Co.*, 29 Del. 201, 97 A. 1014 (1916), *affirmed* 31 Del. 51, 111 A. 264 (1918); *Hartford Fire Ins. Co. v. Farris*, 116 Va. 880, 83 S.E. 377 (1914); *Western Nat. Life Ins. Co. v. Williamson–Halsell–Frasier Co.*, 37 Okla. 213, 131 P. 691 (1913); *Shawnee Fire Ins. Co. v. Thompson & Rowell et al.*, 30 Okla. 466, 119 P. 985 (1911); *German American Ins. Co. v. Fuller*, 26 Okla. 722, 110 P. 763 (1910); *Insurance Co. vs. Rosenberg*, 23 Del. 174, 74 A. 1073 (1909); *Aetna Insurance Co. v. Johnson*, 127 Ga. 491, 56 S.E. 643 (1907); *Prudential Fire Ins. Co. v. Alley*, 104 Va. 356, 51 S.E. 812 (1905); *Great American Insurance Company v. Lang*, 416 S.W.2d 541 (Tex. Civ. App. 1967); *Wisden v. American Ins. Co.*, 9 Ohio App. 2d 48, 222 N.E.2d 826 (1964); *Fields v. Queen Insurance Company*, 31 Ga. App. 683, 121 S.E. 697 (1924); *Home Ins. Co. v. Flewellen*, 221 S.W. 630 (Tex. Civ. App. 1920), *affirmed* 247 S.W. 833 (Tex. Com. App. 1923); *Camden Fire Ins. Co. v. Yarbrough*, 215 S.W. 842 (Tex. Com. App. 1919); *Royal Exchange Assur. v. Rosborough*, 142 S.W. 70 (Tex. Civ. App. 1911); *Orient Ins. Co. v. Dorroh–Kelly Merc. Co.*, 59 Tex. Civ. App. 289, 126 S.W. 616 (1910), *affirmed* 104 Tex. 199, 135 S.W. 1165 (1911); *Johnson v. Fire Ins. Co.*, 120 Mo. App. 80, 96 S.W. 697 (1906); *Roberts, Etc., Co. v. Insurance Co.*, 19 Tex. Civ. App. 338, 48 S.W. 559 (1898).

Nebraska is no exception. See, *Continental Ins. Co. v. Waugh*, 60 Neb. 348, 83 N.W. 81 (1900) (clause requiring insured to take inventory and keep books of account characterized as warranty); *Jeary, supra.*

A warranty has been defined as a statement or promise the untruthfulness or nonfulfillment of which in any respect renders the policy voidable by the insurer. See, Robert E. Keeton & Alan I. Widiss, Insurance Law, A Guide to Fundamental Principles, Legal Doctrines, and Commercial Practices § 6.6(a) (1988); William R. Vance, Handbook on the Law of Insurance § 71 (3d ed. 1951). It enters into and forms a part of the contract itself, defining the precise limits of the obligation, and no liability can arise except within those limits. 12A John Alan Appleman & Jean Appleman, Insurance Law and Practice § 7353 (1981). That is to say, a warranty serves to establish a condition precedent to an insurer's obligation to pay. See Keeton & Widiss, *supra.* A condition precedent is a condition which must be performed before the parties' agreement becomes a binding contract, or a condition which must be fulfilled before a duty to perform an existing contract arises. *Schmidt v. J. C. Robinson Seed Co.*, 220 Neb. 344, 370 N.W.2d 103 (1985).

A warranty may be express or implied, and affirmative or promissory. 7 George J. Couch, Cyclopedia of Insurance Law § 36.1 (rev. 2d ed. 1985). A "promissory" or "executory" warranty is one in which the insured undertakes to perform some executory stipulation, as that certain acts shall or will be done, or that certain facts shall or will continue to exist. *Id.*, § 36.5. A promissory warranty requires certain action or nonaction on the part of the insured after the policy has been entered into in order that its terms shall not thereafter be breached. 12A Appleman, *supra.*

Thus, in considering an appeal from the federal district court for the District of Nebraska, the Eighth Circuit held that a provision in an indemnity bond against loss from employee dishonesty, requiring that all checks drawn by a particular employee would be countersigned by the bookkeeper, was a condition precedent to recovery and a warranty. *Rice v. Fidelity & Deposit Co.*, 103 F. 427 (8th Cir. 1900). It explained that "[a] warranty, in the law of insurance, is a binding agreement that the facts stated by the applicant are true. It is a part of the contract, a condition precedent to a recovery upon it . . . ." *Id.* at 430. The *Rice* court reasoned that the agreements of the

parties were mutual covenants, a covenant by the employers that they would require a countersignature, and a covenant of the fidelity company that it would pay the losses. Therefore, the *Rice* court concluded that a written statement made by employers to the obligor in a bond of indemnity against the dishonet acts of their employee to the effect that they would invariably apply certain checks to his conduct was a warranty, the fulfillment of which constituted a condition precedent to a recovery. Having failed to fulfill the condition, the *Rice* court concluded, the insured was not entitled to recover on the bond.

Here, the parties' agreement contains mutual covenants. Coppi as the insured agreed to keep records of the money in such manner that West American as the insurer could accurately determine from them the amount of loss, and West American agreed to reimburse the theft of the money used in the conduct of Coppi's business. Thus, the recordkeeping provision in Coppi's insurance policy is a promissory warranty, meaning that Coppi covenanted to do something in the future. As such, compliance with this warranty is a condition precedent to recovery under the policy.

In keeping with those principles, we have held that § 44–358 does not relate to a breach of the terms of a policy which could arise only after the loss has occurred. *First Security Bank v. New Hampshire Ins. Co.*, 232 Neb. 493, 441 N.W.2d 188 (1989); *Ach v. Farmers Mut. Ins. Co.*, 191 Neb. 407, 215 N.W.2d 518 (1974); *Clark v. State Farmers Ins. Co.*, 142 Neb. 483, 7 N.W.2d 71 (1942). Section 44–358 does not deny the insurer the right to rely upon the conditions of its policy which the insured is required to perform as a condition of recovery after the loss has occurred. *First Security Bank, supra*; *Ach, supra*. It relates to the question of a recoverable loss and not to the question of procedure to be followed in collecting for the loss after it has occurred. Clearly, notice of loss and proof of loss can be given only after the loss has occurred. *Id*.

In short, § 44–358 deals with warranties which are conditions precedent to the very existence of an insurance contract, not with promissory warranties the fulfillment of which are conditions precedent to recovery under an insurance contract which has come into being. Thus, § 44–358 has no application

to the situation at hand, and the first assignment of error fails.

## 2. ALLOCATION OF BURDEN OF PROOF

The second assignment of error challenges the district court's allocating to Coppi the burden of proving that he maintained the required records. He urges that it was West American's burden to prove that he did not do so.

Neb. Rev. Stat. § 25-836 (Reissue 1989) provides: "In pleading the performance of conditions precedent in a contract, it shall be sufficient to state that the party duly performed all the conditions on his part; and if such allegation be controverted, the party pleading must establish on the trial the facts showing such performance." We have therefore held that the burden rests on a plaintiff to show the fulfillment of a condition precedent to the right of recovery. *Rubin v. Pioneer Fed. S. & L. Assn.*, 214 Neb. 364, 334 N.W.2d 424 (1983). When the pleading of performance of a condition precedent in a contract is controverted, the party pleading the performance of such condition precedent is required to establish on the trial the facts showing such performance. *Id.*

If a defendant relies upon nonperformance of the contract, the defendant must allege that fact in the answer, and in pleading nonperformance, the facts which constitute the breach must be alleged. *Cartwright and Wilson Constr. Co. v. Smith*, 155 Neb. 431, 52 N.W.2d 274 (1952). Where by statute, as is the case here, the plaintiff is authorized to plead general performance of all conditions precedent, the defendant must, if relying upon the fact that any of the conditions precedent have not been performed, set out specifically the condition and the breach. *Id.*

Coppi alleged that he had paid the premium and "fulfilled all other conditions precedent." In its answer, West American denied that Coppi had complied with the recordkeeping conditions precedent and further alleged that Coppi was not entitled to recover because the policy specifically provided that "[n]o suit shall be brought on this policy unless the insured has complied with all the policy provisions."

Although West American calls these allegations "affirmative defenses," pleading that Coppi failed to perform conditions

precedent to recovery under the policy does not plead an affirmative defense. Affirmative defenses are matters which seek to avoid a valid contract. *Lease Northwest v. Davis*, 224 Neb. 617, 400 N.W.2d 220 (1987). West American is not seeking to avoid the contract; rather, it is asserting that its contractual liability did not arise because Coppi failed to perform the conditions precedent to West American's duty to pay.

Thus, contrary to Coppi's suggestion, neither is West American's defense based upon an exclusionary clause in a policy. An exclusion is a provision which eliminates coverage where, were it not for the exclusion, coverage would have existed. *Kansas–Nebraska Nat. Gas Co., Inc. v. Hawkeye–Security Ins. Co.*, 195 Neb. 658, 240 N.W.2d 28 (1976). Had West American so alleged, it would have relied on an affirmative defense and would then have had the burden to prove facts which brought the occurrence within the exclusion. *Thorell v. Union Ins. Co.*, 242 Neb. 57, 492 N.W.2d 879 (1992).

West American's answer effectively asserts only that Coppi breached the contract by his failure to keep the required records. In that regard, not only have we held that where coverage is denied, the burden of proving coverage under a policy is upon the insured, *Swedberg v. Battle Creek Mut. Ins. Co.*, 218 Neb. 447, 356 N.W.2d 456 (1984), but we have specifically ruled that the burden is on an insured to prove that it complied with the recordkeeping provisions.

In *Bruner Co. v. Fidelity & Casualty Co.*, 101 Neb. 825, 166 N.W. 242 (1917), this court affirmed the decision of the trial court where it had instructed the jury that the burden was upon the insured to prove that the insured kept books from which the insurer could accurately ascertain loss. In *Bruner Co.*, the insured brought an action against the insurer to recover under a burglary or theft insurance policy. The policy provided that the insurer would not be liable for any loss unless books and accounts were regularly kept so the insurer could accurately determine the loss. The insurer asserted that there should be no recovery due to the insured's violation of the bookkeeping condition.

In a general instruction, the *Bruner Co.* court instructed the jury that before the insured could recover, the burden of proof

was on it to prove that it had kept books of account from which the loss could accurately be ascertained. The insured recovered a judgment, and the insurer appealed, claiming that its defense of noncompliance with the bookkeeping provision was prejudiced because it was contained only in a general instruction. The *Bruner Co.* court concluded that the district court had correctly instructed the jury upon each of the matters the plaintiff had to establish and that it was unnecessary to restate the law in regard to a single defense in a specific instruction directed only to that defense.

Similarly, other jurisdictions have allocated to the insured the burden of proving compliance with a promissory warranty which gave rise to a condition precedent to recovery. In *Cooper v. Ins. Co.*, 98 W. Va. 655, 127 S.E. 511 (1925), the West Virginia Supreme Court of Appeals held that it was the insured's burden of proof to show compliance with an iron–safe clause warranty, since the insurer had specified a failure to comply with the warranty as defeating recovery. The Missouri Court of Appeals has also held that the burden is on the insured to show compliance with an iron–safe clause when the insurer's answer denies the insured's allegation of full performance of conditions precedent. *Pruzan v. National Surety Corporation*, 223 S.W.2d 8 (Mo. App. 1949); *Johnson v. Fire Ins. Co.*, 120 Mo. App. 80, 96 S.W. 697 (1906). Moreover, the Delaware Supreme Court has held that a bookkeeping provision is a promissory warranty, and the insured must show at least a substantial compliance to recover under the insurance policy. *Std. Acc. Ins. Co. v. Ponsell's Drug*, 57 Del. 485, 202 A.2d 271 (1964); *Insurance Co. vs. Rosenberg*, 23 Del. 174, 74 A. 1073 (1909). See, also, *Rehburg v. Constitution States Ins. Co.*, 555 So. 2d 79 (Ala. 1989) (endorsement in liability policy requiring insureds' pool be fenced and locked was promissory warranty and condition precedent to recovery); *Alaska Foods, Inc. v. American Mfr.'s Mut. Ins. Co.*, 482 P.2d 842 (Alaska 1971) (monthly reporting provisions in fire insurance policy are conditions precedent to liability under policy); *Jonette Jewelry Co. v. Liberty Mutual Ins.*, 105 R.I. 308, 251 A.2d 521 (1969) (recordkeeping provision was condition precedent to liability of defendant insurer); *Damron v. Fireman's Fund Insurance*

*Company*, 430 S.W.2d 956 (Tex. Civ. App. 1968) (provisions in jeweler's block policy requiring itemized inventory was promissory warranty and condition precedent to recovery); *Great American Insurance Company v. Lang*, 416 S.W.2d 541 (Tex. Civ. App. 1967) (provision in theft policy requiring jewelry store owner to keep percentage of insured property in safe was promissory warranty and condition).

Nor was the allocation of the burden of proof affected, as Coppi suggests, by the fact that he provided, as West American had requested, financial records of his postloss business activities. Although Coppi urges that this provided West American an alternative means of determining the loss, the fact is that West American's exploration of other ways of determining the loss did not establish what amount of cash was in the safe when it was stolen.

Accordingly, the district court properly allocated the burden of proof on this issue to Coppi; the second assignment of error also fails.

### 3. Expert Testimony

In the third assignment of error, Coppi contends the district court wrongly permitted West American's adjuster to, in effect, testify that he, Coppi, did not comply with the recordkeeping requirement of the policy.

The Court of Appeals did not reach this or the fourth and last assignment of error. In the interest of judicial economy, we have in the past addressed assignments of error not reached by the Court of Appeals instead of remanding the action for further consideration on those issues. *Florist Supply of Omaha v. Prochaska*, 244 Neb. 776, 509 N.W.2d 209 (1993). Such a practice is consistent with that of other jurisdictions which have held that the supreme court of a state has the option, when reversing the intermediate court's judgment, of remanding unaddressed assignments of error to the intermediate appellate court or of addressing the issues itself. *Capitol Brick, Inc. v. Fleming Mfg. Co.*, 722 S.W.2d 399 (Tex. 1986); *Zontelli & Sons v. City of Nashwauk*, 373 N.W.2d 744 (Minn. 1985); *Roark v. Allen*, 633 S.W.2d 804 (Tex. 1982). But see *Relational Systems International v. Cable*, 303 Or. 71, 733 P.2d 1379 (1987). Thus,

we may, upon granting further review which results in the reversal of a decision of the Court of Appeals, consider, as we deem appropriate, some or all of the assignments of error the Court of Appeals did not reach.

Having so determined, we choose to consider the remaining assignments of error, and move on to Coppi's claim that the adjuster's testimony was excludable, in his view, for a variety of reasons. First, the opinion dealt with the ultimate fact at issue before the jury. Second, the matter did not involve knowledge that was superior to that of the public in general, so the jury was not aided by the testimony. Third, the evidence was not relevant because the issue was not what other insurance companies would have done, but what West American should have done. And fourth, the adjuster lacked the necessary qualification to testify.

We begin by recalling that in proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by those rules, not by judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in the admissibility of evidence. *Terry v. Duff*, 246 Neb. 524, 519 N.W.2d 550 (1994).

Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 1989), provides that if "specialized knowledge will assist the trier of fact . . . to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." A witness may qualify as an expert by virtue of either formal training or actual practical experience in the field. *Crawford v. Department of Motor Vehicles*, 246 Neb. 319, 518 N.W.2d 148 (1994).

The admissibility of expert testimony depends on whether specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. *McDonald v. Miller*, 246 Neb.144, 518 N.W.2d 80 (1994). Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *State v. Fahlk*, 246 Neb. 834, 524 N.W.2d 39 (1994); Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue

1989). It is for the trial court to make the initial decision on whether the testimony will assist the trier of fact. *McDonald, supra.* The soundness of its determination depends upon the qualifications of the witness, the nature of the issue on which the opinion is sought, the foundation laid, and the particular facts of the case. *Id.*

The opinion was not inadmissible because it embraced the ultimate issue to be decided by the trier of fact. Indeed, Neb. Evid. R. 704, Neb. Rev. Stat. § 27-704 (Reissue 1989), provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

Coppi's argument that the adjuster's testimony was inadmissible because it did not involve knowledge which was superior to that of the public in general is also without merit. Expert testimony which may be of assistance to the trier of fact is admissible even in areas where laypersons have competence to determine the facts. *Hegarty v. Campbell Soup Co.*, 214 Neb. 716, 335 N.W.2d 758 (1983).

Expert testimony as to the custom and practice of an industry is admissible to elucidate the meaning of ambiguous language. *Nebraska Depository Inst. Guar. Corp. v. Stastny*, 243 Neb. 36, 497 N.W.2d 657 (1993). When a contract term is not defined in the contract and the parties dispute the intended meaning of the term, an expert witness may properly testify as to the expert's interpretation of the contract language. *Id.* Ambiguity exists in an instrument when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Plambeck v. Union Pacific RR. Co.*, 244 Neb. 780, 509 N.W.2d 17 (1993). A written instrument is open to explanation by parol evidence when its terms are susceptible of two constructions, or where the language employed is vague or ambiguous. *Lovelace v. Stern*, 207 Neb. 174, 297 N.W.2d 160 (1980). Evidence of custom is admissible when there is a conflict as to the terms of the contract to explain the meaning of the words or phrases used, or where the contract is silent as to certain points which may be inherent in the nature of the contract. *Rickertsen v. Carskadon*, 172 Neb. 46, 108 N.W.2d 392 (1961).

The recordkeeping provision in question is not clear because it does not specify the type of records to be kept. The provision merely states that the insured shall keep records such that the loss can be accurately determined. In the face of Coppi's testimony that the records he kept were of the type normally kept by beauty salons, the adjuster's opinion was relevant as to whether the records were sufficient to accurately determine the loss. Thus, not only did the adjuster have knowledge superior to that of the general public, his testimony was relevant.

Furthermore, the adjuster was qualified to render his opinion; not only was he the adjuster handling Coppi's claim, he had worked as an adjuster for West American and others for 19 years and had handled hundreds of cash loss burglary claims.

Consequently, the district court did not err in receiving the adjuster's testimony; the third assignment of error fails as well.

### 4. COMPLIANCE

In the fourth and final assignment of error, Coppi urges that the district court was wrong in not finding as a matter of law that he complied with the recordkeeping provisions of the policy, and thus mistakenly failed to direct a verdict in his favor or to grant him a new trial or judgment notwithstanding the verdict.

The foregoing resolutions of the preceding assignments of error presage the resolution of this assignment, for in order to sustain a motion for directed verdict, the trial court must resolve the controversy as a matter of law and is to do so only when the facts are such that reasonable minds can draw only one conclusion; in considering the evidence for the purposes of a directed verdict motion, the party against whom the motion is made is entitled to have the benefit of every inference which can reasonably be drawn from the evidence, and the case may not be decided as a matter of law if there is any evidence in favor of the party against whom the motion is made. *Holman v. Papio-Missouri River Nat. Resources Dist.*, 246 Neb. 787, 523 N.W.2d 510 (1994).

While there was no question, and indeed the district court found as a matter of law, that West American insured the theft

by burglary which took place, the amount of the loss was controverted, and whether Coppi kept the required records was a matter on which the evidence conflicted.

The district court was therefore correct in not resolving the controversy as a matter of law and in not granting a new trial or judgment notwithstanding the verdict. As a consequence, the fourth and final assignment of error fails, as did the preceding three.

## V. JUDGMENT

As first noted in part I, the judgment of the Court of Appeals is reversed and the cause remanded to that court with the direction that it reinstate the judgment of the district court.

REVERSED AND REMANDED WITH DIRECTION.

WHITE, J., not participating.